**OMAR, By and Through his next friend, Kevin CANNON, Plaintiff,**

v.

**Joan LINDSEY, Gloria Babcock, Barbara Holmes, Doris Malave, Cindy Morales, Raul Moringlane, Jr., Bruce Rowley, and Janice Yahnke, Defendants.**

No. 6:02CV1063–ORL–19KRS.

United States District Court,
M.D. Florida,
Orlando Division.

Jan. 14, 2003.

---

Roy D. Wasson, Law Office of Roy D. Wasson, Miami, FL, Karen A. Gievers, Karen A. Gievers, P.A., Tallahassee, FL, for Plaintiff.

Ronald L. Harrop, Peter N. Smith, Gurney & Handley, P.A., Orlando, FL, for Defendants.

## ORDER

FAWSETT, District Judge.

This case was considered by the Court on the following:

1. Defendants' Joan Lindsey, Gloria Babcock, Barbara Holmes, Doris Malave, Cindy Morales, Raul Moringlane, Jr., Bruce Rowley and Janice Yahnke Motion to Dismiss Plaintiff's Amended Complaint. Doc. No. 22;

2. Memorandum of Law in Support of Motion of Defendants Joan Lindsey, Gloria Babcock, Barbara Holmes, Doris Malave, Raul Moringlane, Jr., Bruce Rowley and Janice Yahnke to Dismiss Plaintiff's Amended Complaint. Doc. No. 23;

3. Plaintiff's Unopposed Motion for Enlargement of Time to respond to Defendants Motion to Dismiss. Doc. No. 26;

4. Plaintiff's Request for Oral Argument. Doc. No. 27;

5. Plaintiff's Motion in Opposition to Defendants' Motion to Dismiss Amended Complaint. Doc. No. 28.

## Background

In his lengthy complaint, Plaintiff, a minor child, alleges that at age fourteen months he was placed in inappropriate foster care by Defendants, all of whom were at all relevant times employees of the State of Florida's Department of Children and Families ("DCAF"). He also alleges that Defendants permitted him to be adopted by an abusive parent. He claims that Defendants' gross dereliction of duty as officers of the state resulted in a childhood of unremitting and intense abuse, often what can only be described as outright torture. Indeed, the complaint depicts plainly criminal maltreatment, from beatings to the unconscionable use of tear gas on children. Plaintiff has brought suit against Defendants in their individual capacities under the fourteenth amendment, arguing that they collectively violated his constitutional right to reasonably safe foster and adoptive care.

## Standard of Review

For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to Plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom. *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir.1994); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Furthermore, the Court must limit its consideration to the pleadings and written instruments attached as exhibits thereto. *Fed R. Civ. P.* 10(c); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir.1993). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that Plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## Analysis

### 1. Qualified Immunity

Defendants, all of whom are being sued in their individual capacities, raise the defense of qualified immunity. They aver that Plaintiff had no "clearly established" right to be free of the sort of abuse he endured because the only relevant foster care case, *Taylor v. Ledbetter*, 818 F.2d 791 (11th Cir.1987), concerned different, albeit similar, facts. Defendants contend, in other words, that they were on notice only that it is constitutionally wrongful to allow a foster mother to bludgeon her foster child into a permanent coma, which is what happened in *Taylor*. *Taylor*, they argue, did not forewarn them that they would be liable when, with deliberate indifference, they stood by while Plaintiff's foster mother whipped him, starved him, left him chronically dehydrated, gassed him with mace, neglected his severe illnesses (inflicted by her abuse), tied him up like a farm animal, and forced him to live squalidly in animal filth. In raising this defense, Defendants urge the Court to give qualified immunity doctrine its most expansive possible interpretation, arguing that civil servants will be unwilling to undertake their often difficult and vital work unless they have the protection of robust immunities. Doc. No. 23, 2.

██ The Supreme Court has held that a qualified immunity analysis consists of two distinct strands. First, the Court must evaluate the complaint to determine if its allegations, assuming they are true, plead a cognizable violation of the constitution. See *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If this is answered in the affirmative, the Court pursues the second inquiry, which is to determine whether the right in question was clearly established. *Ibid.* This is not, however, a broad rumination on the law. Instead, it is a careful examination of the facts at hand, one that asks "whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. 2151. See *Wilson v. Layne*, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (stating that "the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established.").

### a. Was There A Constitutional Violation?

██ The pleadings do allege a constitutional violation[1]. There is no question that foster children have a fourteenth amendment liberty interest in physical safety, including a freedom from the sort of shocking abuse Plaintiff endured. See *Taylor* at 794–795. The facts of *Taylor* are similar to the allegations in the instant case. County and state officials removed a toddler from her natural parents and placed her with a foster mother. While in the foster home, however, the child was subjected to such merciless abuse at the hands of her guardian that she was left comatose. The Eleventh Circuit reasoned that foster care was analogous to involuntary custody in a state mental institution, which had previously been held by the Supreme Court to be a setting that implicates the fourteenth amendment. See *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). The maltreatment of a foster child, in other words, violates his or her constitutional rights if, had the maltreatment in question occurred in a traditional custodial context such as a prison or mental facility, it would have violated an inmate's rights. According to the complaint, Plaintiff was brutalized with, *inter alia*, beatings, persistent malnourishment, dehydration, neglected illness, mace, and being bound. The depravity of this abuse plainly brings Plaintiff's case within the ambit of the *Taylor* doctrine, and the Court concludes, therefore, that the complaint satisfactorily pleads a fourteenth amendment violation.

██ Liability will attach, however, only if the unconstitutional injuries were proximately caused by the deliberate indifference of officials to known risks. Omissions or nonfeasance, in other words, can only be the predicates for liability if officials fail with deliberate indifference to fulfil a statutory or other duty to act. *Taylor* at 796. The complaint in the instant case repeatedly alleges that Defendants knew that Plaintiff was being egregiously abused and time after time did nothing to rescue him.[2] Furthermore,

---

**1.** The analysis of whether a constitutional right was violated applies to all Defendants equally. In the interest of brevity, the Court has chosen not to analyze each count against each defendant individually.

**2.** Defendants argue that Plaintiff's complaint is ambiguous with respect to when Defendants learned of the abuse, failing to state that

Defendants knew of the abuse while it was occurring. While the Court agrees that this is a crucial material fact for this litigation to resolve, it is not something that Plaintiff needs to prove or allege with unreasonable specificity in his complaint. At the motion to dismiss stage, this sort of factual ambiguity, to the

contrary to Defendants contention, Plaintiff's complaint does not allege mere negligence, which, Defendants correctly point out, does not offend the Constitution. Instead, it adequately pleads the elements of deliberate indifference, as enunciated by *McElligott v. Foley*, 182 F.3d 1248 (11th Cir.1999). Assuming the facts in Plaintiff's complaint to be true, it is beyond doubt that the deliberate indifference of Defendants to Plaintiff's continuing peril was a proximate cause of his injuries, thereby transforming his foster mother's criminal abuse into a constitutional tort for which state actors may be held liable.

### b. Was The Right In Question Clearly Established?

As suggested earlier, the mere fact that *Taylor v. Ledbetter* establishes that foster children have a liberty interest in being free of harsh abuse does not correlatively mean, with no further analysis, that this right was "clearly established" at the time in question.[3] The Court must examine the complaint's factual allegations and determine whether reasonable officers in the position of Defendants would have understood that their conduct violated a clearly established right.

██ Defendants assert that they are entitled to qualified immunity unless the allegations in the instant case are essentially indistinguishable from the facts of *Taylor*. They contend that Eleventh Circuit decisional law has repeatedly emphasized that a government actor does not have ade-

quate notice that her conduct is wrongful unless precedent with an identical fact-pattern has unambiguously declared it to be so. Doc. No. 23, pp. 7–13. Unsurprisingly, this stringent test was satisfied only in the rarest of circumstances, and § 1983 litigants in the Eleventh Circuit have generally found qualified immunity to be a nearly insuperable obstacle.

This, however, is no longer the law. Last spring, the Supreme Court handed down a decision that clarifies how a court is to determine whether a particular right was "clearly established" for the purposes of a qualified immunity analysis. In *Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002), the Supreme Court overruled the Eleventh Circuit, holding that its exacting qualified immunity doctrine was too strict. In *Hope*, an Alabama prisoner sued three prison guards in their individual capacities, alleging that they violated his eighth amendment right to be free of cruel and unusual punishment when they left him handcuffed to a metal pole for hours with neither water nor respite. Even though it concluded that this abhorrent maltreatment indeed violated the eighth amendment, the Eleventh Circuit granted summary judgment to the guards on the ground that they were not on notice that such conduct was unconstitutional because circuit precedent had never addressed this specific fact-pattern.

██ In considering this decision, the Supreme Court ruled that salient cases

---

extent that it even exists, must be construed in Plaintiff's favor.

**3.** Defendants suggest in their memorandum that *Taylor* cannot be used as the basis of a qualified immunity analysis because the Eleventh Circuit explicitly noted that its opinion does not address the applicability of a qualified immunity defense. Doc. No. 23, p. 10. It does not follow from what the appellate court wrote, however, that *Taylor* would have

been decided differently had the defendant in that case asserted a qualified immunity defense, and, therefore, that *Taylor* can never be used in a case in which the defendant invokes qualified immunity. *Taylor* simply stands for the proposition that foster children have a fourteenth amendment liberty interest in safe and secure foster care. The question of qualified immunity is adjudicated under an entirely different line of cases.

like *Gates v. Collier*, 501 F.2d 1291 (5th Cir.1974), furnished the guards with sufficient notice even though the facts in *Gates* were not perfectly congruent with the facts in *Hope*. This analytical flexibility reflects a deeper elaboration of what the Supreme Court meant in *United States v. Lanier*, 520 U.S. 259, 271, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) when it wrote that "general statements of the law are not inherently incapable of giving fair and clear warning." The germane issue in a qualified immunity analysis, in other words, is not whether there is factually identical precedent but, instead, whether "in light of preexisting law the unlawfulness [of the alleged conduct is] apparent." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); see also *Mitchell v. Forsyth*, 472 U.S. 511 n. 12, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (stating that a governmental actor is not necessarily protected by qualified immunity just because the specific conduct in question has not previously been declared unconstitutional).

Plaintiff's fourteenth amendment right to be physically secure was "clearly established" at all relevant times. *Taylor* established the proposition that foster children have a liberty interest, pursuant to the substantive due process clause of the fourteenth amendment, in physical safety. It is absurd to argue that the facts of *Taylor*, with its whirlwind of violent abuse, insufficiently notified Defendants that the sort of willful indifference at the heart of this case was unconstitutional. Indeed, it taxes the powers of the Court's imagination to fathom what would violate the constitution if not deliberate indifference to the gruesome and unfettered torture of a helpless little boy like Plaintiff. Defendants, in essence, are in the awkward position of arguing that even though they were idle while Plaintiff was subjected to obscene abuse, including being maced and starved, they would have stepped in had

the mother begun to pound him into a permanent coma because, after all, beating toddlers into a coma is what the constitution, as explicated by *Taylor*, prohibits.

As the Supreme Court explained in *Hope*, however, our constitutional jurisprudence is not so bereft of good sense and flexibility that decisions in one case do not apply under similar but nevertheless different facts in another. Assuming the factual allegations of Plaintiff's complaint to be true, the Court concludes that Plaintiff had a "clearly established" right not be brutalized the way in which he alleges he was, and, therefore, that Defendants cannot assert a defense of qualified immunity at this stage.

**2. Does the Complaint Meet the Heightened Pleading Requirements of a § 1983 lawsuit?**

 Despite the lenience of the Federal Rules of Civil Procedure, it is axiomatic that defendants remain entitled to know exactly what claims are being brought against them. See Fed R. Civ. P. 8 & 10. Where the specter of frivolous or retaliatory litigation is high, courts sometimes impose heightened pleading requirements to ensure that potential defendants are not deterred from engaging in socially beneficial activity. Such is the case with § 1983. As Defendants point out, the Eleventh Circuit requires § 1983 plaintiffs to fulfill a higher standard of specificity in their complaints. See *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir.) (citing *Arnold v. Bd. of Educ.*, 880 F.2d 305, 309 (11th Cir.1989)); *GJR Investments, Inc. v. County of Escambia, Florida*, 132 F.3d 1359, 1367 (11th Cir. 1998) ("Some factual detail in the pleadings is necessary . . . in cases involving qualified immunity, where [the Court] must determine whether a defendant's actions violated a clearly established right.").

While mindful of this standard, the Court finds as a matter of law that Plaintiff's complaint satisfactorily pleads what is required. Defendants argue that Plaintiff's complaint evinces three defects that courts have repeatedly condemned. First, Defendants contend that Plaintiff simply alleges the violation of general or abstract constitutional rights. Doc. No. 23, p. 13. This, however, is not true. Plaintiff specifically alleges that each Defendant violated his fourteenth amendment liberty interest, as articulated by *Taylor*, to have a physically secure environment while in foster care. Second, Defendants claim that Plaintiff's conclusory allegations "render it nearly impossible for the district court to conduct the 'fact-sensitive' examination of controlling caselaw required by qualified immunity." Doc. No. 23, p. 14. Whatever ambiguities might arise in more complex cases, the Court did not encounter any inordinate problems in determining that the allegations of the instant case fell within the compass of *Taylor*. Finally, Defendants argue that Plaintiff's "vague and conclusory allegations render nearly impossible the task of assessing how the qualified immunity defense applies to *each* individual defendant, as the district court is required to do." *Ibid.* Given that the constitutional claim against each Defendant is framed as a separate count, the Court was able to ascertain the nature of each claim and evaluate whether its allegations were sufficient to overcome the qualified immunity threshold. Upon careful consideration, the Court concludes that each count alleges a cognizable constitutional violation of a clearly established right under the substantive due process clause of the fourteenth amendment.

### 3. Has the Statute of Limitations Expired?

 The applicable statute of limitations in a § 1983 lawsuit is the four-year Florida state statute of limitations for personal injuries. See *Wilson v. Garcia*, 471 U.S. 261, 276, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (stating that state statutes of limitations for personal injuries govern § 1983); *Baker v. Gulf & Western Industries, Inc.*, 850 F.2d 1480, 1482 (11th Cir.1988) (stating that Fla. Stat. Ann. § 95.11(3) provides for a four-year limitations period for personal injuries). Defendants argue that virtually all of the allegedly unconstitutional conduct in the complaint occurred between 1989 and 1991, well outside the scope of the four-year period. As with all statutes of limitations, however, this one is subject to various exceptions, which toll its running. The salient question, therefore, is whether any applicable tolling provision applies.

 It would be premature to dismiss the complaint because the applicable statute of limitations has run. While it is proper to grant a Rule 12(b)(6) motion if noncompliance with the statute of limitations is apparent on the face of the complaint, such is not the case here. See, e.g. *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir.1978). Both parties set forth fact-intensive reasons why the motion to dismiss on the basis of the statute of limitations should be granted or denied. Plaintiff argues that he was only recently aware that Defendants are responsible for his injuries, and that the relevant statute of limitations was thereby tolled until he made this discovery. Plaintiff also argues that Defendants concealment of their nonfeasance hampered the ability of Plaintiff to learn the full truth of what happened to him. Defendants, on the other hand, argue that Plaintiff ceased to be in their custody once he was adopted in the early 1990s, thus extinguishing their constitutional responsibility for him. They also contend that none of the alleged torts were intentional, which precludes Plaintiff from invoking the expansive statute of limitations

for abuse victims under Fla. Stat. Ann § 95.11(7).[4] In keeping with the standard of review, the Court concludes that the statute of limitations issue cannot be resolved at this stage of the litigation because such resolution would depend either on facts not yet in evidence or on construing factual ambiguities in the complaint in Defendants' favor, which would be inappropriate.

### 4. Plaintiff's Additional Motions

Plaintiff has two additional motions pending. The first requested an enlargement of time within which to respond to Defendants' motion. Doc. No. 26. This motion is denied as moot. The second requested an opportunity for oral argument. Doc. No. 27. This motion is also denied as moot.

### CONCLUSION

For the foregoing reasons, the Court rules as follows:

1. Defendants motion to dismiss (Doc. No. 22) is **DENIED**;

2. Plaintiff's motion for an enlargement of time (Doc. No. 26) is **DENIED**;

3. Plaintiff's motion for oral argument (Doc. No. 27) is **DENIED**.

---

4. Defendants assert that Fla. Stat. Ann. § 95.11(7), which establishes a generous statute of limitations for the victims of childhood abuse, does not apply because Plaintiff's complaint does not allege any intentional torts. Doc. No. 23, pp. 18–19. Plaintiff does not raise the question of whether this statute provides him with any shelter so the Court declines to invoke it on his behalf, other than to remark that the Court has already found that Plaintiff alleged "deliberate indifference" by Defendants to his grave predicament (without "deliberate indifference" there would be no constitutional violation). This "deliberate indifference" satisfies the state statutory definition of abuse. See Fla. Stat. Ann. § 39.01.