**OMAR, by and through his next friend, Kevin CANNON, Plaintiff,**

**v.**

**Joan LINDSEY, Gloria Babcock, Barbara Holmes, Doris Malave, Cindy Morales, Raul Moringlane, Jr., Bruce Rowley, Joyce Setaro and Janice Yahnke, each individually, Defendants.**

**No. 6:02CV–1063ORL19KRS.**

United States District Court, M.D. Florida. Orlando Division.

July 30, 2004.

---

1288

Karen A. Gievers, Gievers, P.A., Talla-
hassee, FL, Roy D. Wasson, Law Office of
Roy D. Wasson, Miami, FL, for Plaintiff.

Peter N. Smith, Ronald L. Harrop, Gurney & Handley, P.A., Orlando, FL, for Defendants.

Sally D. M. Kest, Law Office of Sally D.M. Kest, Orlando, FL, for Interested Party.

James P. Kelaher, Guardian Ad Litem.

## ORDER

FAWSETT, Chief Judge.

This case comes before the Court on the following:

1. Defendants', Joan Lindsey, Gloria Babcock, Barbara Holmes, Doris Malave, Cindy Morales, Raul Moringlane, Jr., Bruce Rowley, and Janice Yahnke, Motion for Partial Final [sic] Summary Judgment on the Statute of Limitations (Doc. No. 59); Defendants', Joan Lindsey. Gloria Babcock, Barbara Holmes, Doris Malave, Cindy Morales, Raul Moringlane, Jr., Bruce Rowley, and Janice Yahnke, Memorandum of Law in Support of their Motion for Partial Final [sic] Summary Judgment on the Statute of Limitations (Doc. No. 60); Plaintiff's Response to Motion for Partial Summary Judgment on the Statute of Limitations and in Response to the Defendants' Related Memorandum of Law (Doc. No. 64).

2. Defendants' Gloria Babcock, Cindy Morales, Raul Moringlane, Jr., and Bruce Rowley Motion for Partial Summary Judgment Based on *DeShaney v. Winnebago County* and Memorandum of Law in Support Thereof (Doc. No. 68); Plaintiff's Response in Opposition to Defendants' Combined Motion for Summary Judgment Based on *DeShaney* (Doc. No. 88).

## Procedural History

On October 15, 2002, Plaintiff sued Defendants in their individual capacities alleging a deprivation of rights guaranteed by the fourteenth amendment. Doc. No. 18. Defendants promptly filed a motion to dismiss, arguing, *inter alia,* that they were entitled to qualified immunity. Doc. Nos. 22 & 23. This motion was denied and affirmed on appeal. Doc. Nos. 31 & 41. Following the close of discovery, the eight original Defendants filed a collective motion for summary judgment on the ground that Plaintiff's claims are barred by the statute of limitations. Doc. No. 59. This motion is presently before the Court.

Since that motion was filed, the parties stipulated to the dismissal of all claims against Defendants Holmes, Lindsey, Malave, and Yahnke. Doc. No. 65. The remaining four Defendants then collectively filed a motion for summary judgment contending that Plaintiff's claims are foreclosed by *DeShaney v. Winnebago County.* Doc. No. 68. This motion is also presently before the Court.

Along with the *DeShaney* motion, each of the four remaining Defendants individually filed motions for summary judgment on the ground of qualified immunity. Doc. Nos. 69, 71, 73 & 75. The Court will address those four motions in an order that will be forthcoming.

## The Facts

The following is not a comprehensive summary of the record, just the facts necessary to resolve the two motions presently before the Court.

Plaintiff is a minor. He was born on November 24, 1986. Doc. No. 68, Ex. A.

He was removed from the custody of his natural mother when he was still an infant. In November of 1989, he was placed in the foster care of Joann Davis. Doc. No. 78, Moringlane Depo., Ex. 37 "Predisposition-al Summary for Dependency." at 5. He was adopted by Davis, along with his biological brother and an unrelated girl, on February 28, 1991. Doc. No. 68, Ex. A. In the interval between his arrival in the Davis household and his adoption, there was evidence that Davis was mistreating her children. *See, e.g.,* Doc. No. 78, Ex. 37 (medical records of an exam conducted on December 21, 1990). The three children were removed from the Davis home on June 23, 1993. Doc. No. 78, Moringlane Depo., Ex. 37 "Predispositional Summary for Dependency." at 5. Defendant does not dispute that Plaintiff was the victim of horrible abuse at the hands of Davis.[1]

### Standard of Review

Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Fed. R. Civ. Plaintiff. 56©); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party." *Id.* The moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In determining whether the moving party has satisfied the burden, the court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. The court may not weigh conflicting evidence or weigh the credibility of the parties. *See Hairston v. Gainesville Sun Pub. Co.,* 9 F.3d 913, 919 (11th Cir.1993) (citation omitted). If a reasonable fact finder could draw more than one inference from the facts, and that inference creates an issue of material fact, then a court must not grant summary judgment. *Id.* (citation omitted).

### Legal Analysis

#### 1. The Statute of Limitations

Defendants move for summary judgment on statute of limitations grounds under three distinct theories. First, a cause of action under section 1983 is subject to Florida's four-year residual personal injury statute of limitations, meaning that Plaintiff can recover only for wrongs committed the four years prior to the July 10, 2002 filing date of this lawsuit. Defendants further argue that the tolling provisions do not apply even though Plaintiff was a minor because a Florida court appointed a guardian ad litem for him after he was removed from the Davis household. Doc. No. 60 at 3–6. Second, even if the limitations period is tolled because Plaintiff

---

1. For example, as part of an investigation into the Davis household in the days leading up to the children's removal, they reported to an investigator of "being tied to a bedpost all night, having food and water withheld up to 3 days, being locked in an animal cage, forced to sleep in a dark garage alone, being tied together standing in Joann's doorway w/ their hands behind them all night, being forced to eat feces & vomit, being hit w/ fishing rod, hammer, frying pan, switch, shoes & sticks." Doc. No. 78, Moringlane Depo., Ex. 37, "Abuse Report" of Karen Loomis.

was a minor, the statute of repose bars any cause of action brought more than seven years after the tortious act. *Id.* at 6. Finally, Defendants contend that the special statute of limitations for cases involving the intentional abuse of minors does not apply because Joanne Davis, not Defendants, was the intentional abuser. *Id.* at 7–10.

 While Defendants are correct that section 1983 claims must comply with the personal injury statute of limitations of the forum state, *Owens v. Okure,* 488 U.S. 235, 250, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989), Defendants fail to address the even more pressing question of when Plaintiff's claims accrued. The state statute of limitations only begins to run when the underlying claims have accrued, and accrual is a question of federal, not state, law. *Rozar v. Mullis,* 85 F.3d 556, 561 (11th Cir.1996) ("Federal law determines when a federal civil rights action accrues.") (citation omitted). "The general federal rule is that 'the statute [of limitations] does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'" *Id.* at 561–562 (quoting *Mullinax v. McElhenney,* 817 F.2d 711, 716 (11th Cir.1987)).

 Plaintiff, who was born on November 24, 1986, was in the abusive Davis household between the ages of two and six. It is self-evident that Plaintiff could not possibly have been cognizant of his rights following his removal from Davis' custody.

Furthermore, the Court will not impute to his then-Guardian ad Litem, Pamela Foels, the legal duty to investigate and bring a constitutional cause-of-action on his behalf. The unrebutted affidavit of Ms. Foels, supported by a copy of a June 24, 1993 state court order, indicates that she was appointed Guardian ad Litem solely for the purposes of a dependency proceeding, not to litigate Plaintiff's tort claims lest they be extinguished by June 24, 1997, five months before his eleventh birthday. Doc. No. 64, Ex. 1, Foels Aff. ¶ 3.

The undisputed evidence demonstrates that the first serious effort by a fiduciary of Plaintiff to pursue legal remedies on his behalf began in February of 2000 when Plaintiff's counsel, Karen Gievers, wrote the Department of Children and Families to request records and notify it of potential claims.[2] *Id.,* Ex. 3, Gievers Aff. ¶ 9. Ms. Gievers struggled with the DCAF for nearly two years before it finally relinquished records germane to Plaintiff's time in the custody of his adoptive mother. The Court, therefore, concludes as a matter of law that Plaintiff's claims did not accrue for the purposes of Florida's statute of limitations until at least November of 2001 when Ms. Gievers finally obtained the records that form much of the factual basis of Plaintiff's constitutional cause of action.

The complaint in this case was filed within eight or nine months of the accrual date for Plaintiff's claims, well within Florida's four-year statute of limitations.[3] Accordingly, Defendants' motion for sum-

**2.** Toward the end of their motion, Defendants argue, implausibly, that in the early 1990s Plaintiff "knew who his abuser was and what type of abuse took place." Doc. No. 60 at 10. More interestingly, they aver that "Omar Davis has been a plaintiff in lawsuits which alleged the *same* abuses complained of in this case." If true, this fact may have altered the

Court's analysis. There is no way for the Court to know, however, because Defendants provided no evidence to support this statement.

**3.** Even if the Court were to conclude that the accrual date was in early February of 2000 when Ms. Gievers began to correspond with

mary judgment on statute of limitations grounds is denied.

### 2. *Deshaney v. Winnebago County*

Defendants contend that their liability is precluded by the doctrine set forth in *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). Doc. No. 68 at 3–4. In *DeShaney*, Joshua DeShaney, who as a four year old suffered catastrophic brain damage at the hands of his father, and his mother brought a section 1983 suit against the Winnebago County (Wisconsin) Department of Social Services ("DSS") and various employees individually because they failed to intervene when there was reason to suspect that Joshua was being abused by his custodial father. Winnebago County first learned of Joshua's situation when his father's second wife told police that the father was a child abuser. *Id.* at 191–193, 109 S.Ct. 998. DSS interviewed the father but pursued the case no further. *Id.* Over the course of the next two years, Joshua was in and out of the hospital with various injuries that his healthcare providers dutifully reported to

DSS as indicative of abuse. *Id.* During this period, DSS left him in his father's custody despite mounting evidence, including the direct observation of head injuries by Joshua's caseworker, that he was being abused. *Id.* Joshua was hospitalized for the final time when his father beat him so severely that he was left with crippling brain damage. *Id.* The Supreme Court held that the substantive due process clause of the Fourteenth Amendment only serves to restrain the government from oppressing its citizens. *Id.* at 195, 109 S.Ct. 998 ("The [Due Process] Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security."). It does not impose upon the government a duty to protect one citizen from another. *Id.* ("[The Due Process Clause's] purpose was to protect people from the State, not to ensure that the State protected them from each other.").

Plaintiff's case is distinguishable from *DeShaney*.[4] The salient fact in *DeShaney*, which is not present in this case, is that neither Winnebago County nor its employees created little Joshua's predicament.

the Department of Children and Families, the complaint in this case was filed within two years.

4. The Court will treat Defendants' motion for summary judgment on *DeShaney* grounds strictly as a question of law, not fact. Defendants, who cite only to adoption records, not their own depositions, apparently believe there is no construction of the facts in the record, even as Plaintiff would have them, that is not foreclosed by *DeShaney*. The basis of this belief is their contention that the only abuse Plaintiff suffered occurred while he was the adoptive child of Joann Davis between February 28, 1991 and June 23, 1993. Doc. No. 68 ¶ 3. This is clearly wrong because, as the Court noted in the preceding summary of the facts, there is evidence that Davis abused Plaintiff while he was still in her foster care.

In any event, in making this decision not to cite their own depositions, Defendants implicitly concede that, for the purposes of their *DeShaney* motion, their various states of mind in the period preceding the adoption, when Plaintiff was in Joann Davis' foster care, are not relevant. For the purposes of this summary judgment only, the Court concludes that Defendants do not contest Plaintiff's interpretation of the record, only the legal implications thereof. The Court will take up the question of Defendants' intent more closely and with much reference to the record, as Defendants themselves do, in the pending motions for summary judgment on the ground of qualified immunity.

Joshua was, so to speak, always in his natural and proper place. *Id.* at 262, 109 S.Ct. 998 ("While the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them."). It was simply a terrible misfortune that his place within the natural order was in the custody of a heinous man.

■ Plaintiff, on the other hand, was not in his place in the natural order when he was being brutalized by his adoptive mother. His place within the natural order was with his natural mother. DCAF, however, removed him from his mother's care when he was still an infant. Indeed, DCAF stripped him of his liberty and rendered him utterly dependent on the beneficence of its employees and agents. It was this seizure and sequestration of Plaintiff that gave rise to a constitutional duty to act as his fiduciary. *Id.* at 199–200, 109 S.Ct. 998 ("when the State takes a person into its custody and holds him there...the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.") (citation omitted); *Omar v. Lindsey,* 243 F.Supp.2d 1339, 1343 (M.D.Fla.2003) *aff'd* 334 F.3d 1246 (11th Cir.2003) ("The maltreatment of a foster child violates his or her constitutional rights if, had the maltreatment in question occurred in a traditional custodial context such as a prison or mental facility, it would have violated an inmate's rights."). Having seized Plaintiff, Defendants then facilitated his adoption by a foster mother who posed a clearly foreseeable risk to his well-being. 489 U.S. at 200, 109 S.Ct. 998 ("when the State by the

affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.,* food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by...the Due Process Clause."). When they did this, Defendants put Plaintiff in an unnatural and improper place, a place he would never have been but-for their intervention under color of state law. Consequently, at least under one interpretation of the facts, *DeShaney* would not apply.

Defendants, to be sure, are not without a point. If Defendants in good faith, or even with mere negligence, first placed Plaintiff in foster care with Joann Davis and then facilitated his adoption by her two years later, then *DeShaney* would apply because Defendants would have acted at all times as constitutionally sufficient stewards of Plaintiff during the time they deprived him of his liberty.[5] *Omar,* 243 F.Supp.2d at 1343 ("Liability will attach...only if the unconstitutional injuries were proximately caused by the deliberate indifference of officials to known risks.") (citing *Taylor v. Ledbetter,* 818 F.2d 791, 796 (11th Cir.1987)). If, however, Defendants first placed Plaintiff in foster care with Joann Davis and then facilitated his adoption by her, and they acted with deliberate indifference to grave and obvious risks, then their stewardship of Plaintiff's well-being did not adequately discharge the duty the constitution places on state actors when they assume control over a citizen's life. Thus, the crucial fact Plaintiff must establish at trial, and this issue

---

**5.** Again, because the question of Defendants' intent is dispositive of the qualified immunity issue, the Court will examine Defendants' state of mind when it addresses the pending qualified immunity motions.

will be addressed when the Court examines the pending motions for summary judgment on the ground of qualified immunity, is that Defendants exercised custodial control over Plaintiff while he was in foster care with Davis and they exercised this control with deliberate indifference to obvious dangers.[6]

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment on the ground of the statute of limitations (Doc. No. 59) is **DENIED.**

Defendant's motion for summary judgment on the ground that liability is precluded by *DeShaney v. Winnebago County* (Doc. No. 64) is **DENIED.**

**6.** Defendants' apparent position that DCAF employees could never be liable for injuries caused by an adoptive parent is absurd on its face. Suppose a DCAF caseworker, knowing that a prospective adoptive parent were a sexual predator, testified during an adoption proceeding that her investigation revealed no reason not to grant the adoption of a foster child in DCAF custody to the predator, and the judge, in reliance on this testimony, did so. Suppose further that the caseworker did this because she hated this particular child or just does not care one whit about what happens to children after they are adopted. *DeShaney* does not stand for the proposition that the state is free to seize children and then, through malice or deliberate indifference, actively work to place those children in the adoptive hands of predators and other dangerous deviants.