[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 11, 2008
THOMAS K. KAHN
CLERK

No. 07-13320
Non-Argument Calendar
_____

D. C. Docket No. 06-22774-CV-PCH

SERVICIOS DE ALMACEN FISCAL ZONA FRANCA Y MANDATOS S.A.,
a/k/a S.A.F., S.A. Mirave 3051 (1284) Buenos Aires, Argentina,

Plaintiff-Appellant,

versus

RYDER INTERNATIONAL, INC.,
RYDER SYSTEM INC., a Florida Corporation,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

**(February 11, 2008)**

Before DUBINA, HULL and WILSON, Circuit Judges.

PER CURIAM:

This appeal arises out of the district court's grant of Defendant Ryder International, Inc.'s ("Ryder") motions to dismiss Plaintiff Servicios de Almacen Fiscal Zona Franca Y Mandatos S.A., a/k/a S.A.F, S.A.'s ("SAF") initial complaint and amended complaint. For the reasons discussed below, we affirm.

## I. BACKGROUND

On March 23, 1995, SAF and Ryder entered into a "Confidentiality and Work Development Agreement" for the purpose of working together to pursue potential clients in Argentina to whom they could supply certain transportation and logistical services. The relevant terms of this agreement are that the parties "agree to be willing to jointly offer automotive companies in the Argentine market" transportation services. "Once either party has identified possible customers, such party will present them to the other party in order that both may jointly pursue individual customers." "Once conversations with possible customers are underway, and before signing contracts with such possible customers, Ryder and SAF shall execute an agreement opening relations between them for each customer."

On December 19, 1995, SAF and Ryder signed a "Supplementary Agreement" which set forth names of the companies whom SAF and Ryder had

already contacted. Furthermore, this agreement set forth the specific services to be provided by SAF if the companies entered into contracts with other businesses.

On August 30, 2005, Ryder informed SAF, via letter, that it had decided to terminate the business agreement effective March 1, 2006.

On November 13, 2006, SAF filed suit alleging breach of contract as well as usurpation of business opportunity and seeking to impose a constructive trust. The crux of its complaint is that Ryder impermissibly sought out and entered into contracts with companies in Argentina to provide the types of services set forth in the agreements and did so without ever notifying SAF or giving SAF the opportunity to participate in those deals. On January 8, 2007, Ryder filed a motion to dismiss, which the district court granted on February 26, 2007. The court held that no enforceable contract was formed and that the breach of contract claim was time-barred in any event. The court also found that SAF's usurpation claim fails as a matter of law because Ryder was not a fiduciary of SAF, which is a required element of a usurpation claim under Florida law. In dismissing the constructive trust claim, the district court did not set forth any specific reasons, but rather stated that "[i]n view of the Court's rulings discussed above, dismissal of SAF's claim for imposition of constructive trust is also appropriate."

Following the district court's dismissal of its initial complaint, SAF filed

an amended complaint on March 8, 2007, which included two new claims: constructive fraud and promissory estoppel. Ryder filed a motion to dismiss the amended complaint on March 28, 2007, which the court granted on June 19, 2007. The court found that SAF's constructive fraud claim warranted dismissal because SAF failed to establish that Ryder owed SAF a fiduciary duty. In dismissing SAF's promissory estoppel claim, the district court found that any reliance on the promises made by Ryder was unreasonable and that the statute of limitations had run.

## II. ISSUE

Whether the district court properly dismissed SAF's initial complaint and amended complaint.

## III. STANDARD OF REVIEW

This court "review[s] *de novo* a district court's dismissal of a complaint for failure to state a claim upon which relief could be granted." *Financial Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th 2007). This court "review[s] *de novo* the district court's dismissal of [a] complaint for failure to satisfy the statute of limitations." *Jackson v. Astrue*, 506 F.3d 1349, 1352 (11th Cir. 2007).

## IV. DISCUSSION

*A) Breach of Contract and Promissory Estoppel Claims*

4

Though the district court found that the agreements at issue were mere agreements to agree and thus unenforceable, we need not address this finding because even if the agreements were enforceable, the statute of limitations for the plaintiff's breach of contract claim had run. Florida Statute § 95.11(2)(b) states that the statute of limitations for breaches of written contracts is five years from the time the cause of action accrues. Florida does not apply the discovery rule to § 95.11(2)(b), so the date of accrual is the date of the first breach. *See Abbot Labs., Inc. v. Glen Elec. Capital*, 765 So. 2d 737, 740 (Fla. Dist. Ct. App. 2000)("[T]he legislature did not intend to provide a discovery rule in section 95.11(2)(b) . . . . To conclude otherwise would require us to write into section 95.11(2)(b) . . . a discovery rule when the legislature has not."). In this case, the plaintiff admitted that the first breach occurred no later than July 24, 2001. Thus, since SAF did not file suit until November 13, 2006, SAF's breach of contract claim is time-barred.[1]

SAF's promissory estoppel claim was also correctly dismissed on statute of

---

[1] SAF argues that the statute of limitations begins to run anew each time that Ryder allegedly contacted another customer without notifying SAF. However, Florida courts have rejected this argument. *See Garden Isles Apartments No. 3, Inc. v. Connolly*, 546 So. 2d 38, 41 (Fla. Dist. Ct. App. 1989) (stating that "[t]he subject escalation clauses were first enforced in 1975 and 1976 respectively. Contrary to appellants' argument that a new cause of action arose each time a new five-year escalation clause became effective, we hold that the cause of action in this case accrued at the time of the first escalation and that the complaint filed in 1986 was well beyond the applicable five-year statute of limitation periods [derived from § 95.11(2)(b)], which commenced in 1975 and 1976.").

limitations grounds. Promissory estoppel is an "equitable action on a contract, obligation, or liability not founded on a written instrument," which must be commenced within four years from when the last element constituting the cause of actions occurs. FLA. STAT. §§ 95.11(3)(k). The analysis here is identical to the analysis discussed above regarding the breach of contract claim, except the limitations period is one year shorter. As previously mentioned, SAF has admitted that the first breach occurred prior to July 24, 2001. Thus, it was on this date, at the latest, that the last element constituting the cause of action occurred. Since more than four years passed between this date and the date of the complaint, the district court properly dismissed this claim.

*B) Usurpation of Business Opportunities, Constructive Trust, and Constructive Fraud Claims*

The district court correctly dismissed these claims because Ryder failed to sufficiently allege a fiduciary relationship, a required element in each of these claims.

First, SAF alleged that Ryder breached its fiduciary duty to SAF by usurping business opportunities. Unsurprisingly, the first requirement for such a claim is the existence of a fiduciary relationship. *See Taylor Woodrow Homes*

*Fla., Inc. v. 4/46-A Corp.,* 850 So. 2d 536, 540 (Fla. Dist. Ct. App. 2003) ("A cause of action for breach of a fiduciary duty is founded on a fiduciary relationship."). Second, SAF alleged that the court should impose a constructive trust against Ryder. Similar to a breach of fiduciary duty claim, "it is essential that the confidential relation be established before a constructive trust will be raised." *Quinn v. Phipps*, 113 So. 419, 422 (Fla. 1929). Third, SAF alleged that Ryder had committed a constructive fraud. Once again, a fiduciary relationship is required in order to succeed on such a claim. *See Levy v. Levy*, 862 So. 2d 48, 53 (Fla. 3rd DCA 2002) ("Constructive fraud occurs when a duty under a confidential or fiduciary relationship has been abused . . . ."). It is clear from these cases that the threshold requirement for each of these claims is the existence of a fiduciary relationship, and the district court correctly found that such a relationship was absent.

SAF primarily argues that a fiduciary relationship exists because Ryder is a bigger company. However, the mere fact that Ryder "stands in a position of greater bargaining power by virtue of its global economic status is . . . not sufficient by itself to impose a fiduciary obligation." *Am. Honda Motor Co., Inc. v. Motorcyle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1180 (M.D. Fla. 2005). Furthermore, as the district court correctly pointed out, "[w]hen the parties are

7

dealing at arm's length, a fiduciary relationship does not exist because there is no duty imposed on either party to protect or benefit the other." *Taylor Woodrow Homes*, 850 So. 2d at 541. Therefore, since SAF and Ryder were dealing at arm's length and the mere fact that Ryder is a larger company does not create a fiduciary relationship, the district court correctly held that Ryder had failed to set forth any facts which could give rise to a fiduciary obligation. Absent such an obligation, none of SAF's aforementioned claims can proceed, and the motion to dismiss such claims was properly granted.

## IV. CONCLUSION

For the aforementioned reasons, we affirm the district court's grant of Ryder's motions to dismiss the initial complaint and the amended complaint.

AFFIRMED.