**Deotha WOODBURN et al., Plaintiffs,**

v.

**STATE OF FLORIDA DEPARTMENT OF CHILDREN AND FAMILY SERVICES et al., Defendants.**

Case No. 09–20981–CIV.

United States District Court, S.D. Florida.

Dec. 1, 2011.

Howard M. Talenfeld, Stacie J. Schmerling, Colodny, Fass, Talenfeld, Karlinsky, & Abate, P.A., Ft. Lauderdale, FL, for Plaintiffs.

Monica Galindo Stinson, Office of Attorney General, Charles M. Fahlbusch, Attorney General Office, Craig S. Hudson, Marshall Dennehey Warner Coleman Goggin, Fort Lauderdale, FL, Blake S. Sando, John Cody German, Cole Scott & Kissane, Cynthia A. Everett, Cynthia A. Everett, P.A., Miami, FL, for Defendants.

## OMNIBUS ORDER ON ALL DEFENDANTS' MOTIONS TO DISMISS AND DEFENDANT STATE OF FLORIDA DEPARTMENT OF CHILDREN AND FAMILY SERVICES' MOTION TO STAY PROCEEDINGS

ROBERT N. SCOLA, JR., District Judge.

THIS MATTER is before the Court on the Defendants' Motions to Dismiss Plaintiffs' Second Amended Complaints and Defendant State of Florida Department of Children and Family Services'.Motion to Stay Proceedings. After considering the written submissions and arguments of the parties, and for reasons more fully set forth below, it is hereby **ORDERED** as follows:

1. Defendants Our Kids, Inc. & Frances Allegra's Motion to Dismiss Plaintiff Lanaza's Second Amended Complaint (ECF No. 169) is **granted in part and denied in part.**

2. Defendant State of Florida Department of Children and Family Services' Motion to Dismiss Plaintiff

Lanaza's Second Amended Complaint (ECF No. 170) is **granted in part and denied in part.**

3. Defendant State of Florida Department of Children and Family Services' Motion to Stay Proceedings on Counts IX and X of Plaintiff Lanaza's Second Amended Complaint (ECF No. 188) is **denied as moot.**

4. Defendants One Hope United, Inc. and Nakeitha Sweeting Hodrick's Motion to Dismiss Plaintiff Lanaza's Second Amended Complaint (ECF No. 171) is **granted in part and denied in part.**

5. Defendant Estate of Olga Rojas' Motion to Dismiss Plaintiff Lanaza's Second Amended Complaint (ECF No. 211) is **denied.**

6. Plaintiff Deotha Woodburn's Second Amended Complaint is **dismissed without prejudice** with regard to all Defendants.

### PROCEDURAL HISTORY

 Plaintiff Deotha Woodburn ("Woodburn") initially brought a *pro se* action on behalf of Plaintiff Soung Lanaza ("Lanaza") and herself on March 30, 2009 against various defendants, some of which are no longer parties to this suit, in the District Court for the Eastern District of New York. That court found that venue was improper, and transferred the case to the Southern District of Florida pursuant to 18 U.S.C. § 1406(a) (2011). After Woodburn filed an Amended Complaint, this court granted Plaintiffs' Motions to proceed *in forma pauperis,* and appointed counsel for Lanaza, while denying Woodburn's request for appointment of counsel. Woodburn continues to act *pro se,* and each Plaintiff now acts on her own behalf. Both Plaintiffs filed a Second Amended Complaint, 2d Am. Compl., May 4, 2011, ECF No. 149, which all Defendants have presently moved to dismiss.[1]

### FACTUAL BACKGROUND [2]

Soung Lanaza is a minor child, bora in Florida in February of 1994 and currently residing in New York. Deotha Woodburn is Lanaza's aunt, one-time foster caregiver, and current legal guardian. At all times material to this action, Woodburn resided in New York. According to an early medical determination, Lanaza was exposed to illegal substances in the womb, which caused damages to her fetal development. Lanaza allegedly suffers from mental and

---

1. Defendant Estate of Olga Rojas' Motion to Dismiss the Second Amended Complaint only addresses the allegations by Lanaza and does not specifically address Woodburn's *pro se* allegations. However, the court, *sua sponte,* has addressed the legal sufficiency of those allegations in this Order. A district court has the inherent power to dismiss, *sua sponte,* a frivolous lawsuit. *Davis v. Kvalheim,* 261 Fed.Appx. 231, 234 (11th Cir.2008). A lawsuit is frivolous if it lacks a legal basis or legal merit. *See Black's Law Dictionary,* 739 (9th ed. 2009). While *pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys, *pro se* litigants must still follow a court's procedural rules. *See Loren v. Sasser,* 309 F.3d 1296, 1304 (11th Cir. 2002). As set forth below, even construed liberally, Woodburn's Complaint has failed to state any claim upon which relief can be granted. Therefore, it lacks legal merit, and *sua sponte* dismissal of her claims without prejudice with regard to the Estate is appropriate.

2. The factual background and general allegations are set forth in Lanaza's Second Amended Complaint. 2d Am. Compl., ECF No. 149. Under established rules of procedure, a court ruling on a defendant's motion to dismiss a complaint must accept well-pled factual allegations as true. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 572, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also Grossman v. Nationsbank, N.A.,* 225 F.3d 1228, 1231 (11th Cir.2000).

physical disabilities due to this exposure. Shortly after her birth, Lanaza was adjudicated dependent and became a ward of the State of Florida, in the legal custody of the State of Florida Department of Children and Family Services ("DCF"), the agency charged by Florida law with operating the state foster care system. She remained a ward of the State until 2010. She allegedly lived in a shelter until 1995, when she was moved to a group home supervised by one Delcita Bartley. Lanaza allegedly lived in the Bartley group home until 1999, when, pursuant to the Interstate Compact for the Protection of Children ("ICPC"), Woodburn became Lanaza's foster caregiver, and Lanaza moved to New York City. Under the terms of the ICPC, Lanaza remained a ward of the State of Florida during her time in Woodburn's care. On April 7, 2010, Woodburn became Lanaza's legal guardian, and Lanaza was no longer in the legal custody of DCF.

Olga Rojas ("Rojas") was a DCF Family Services Counselor assigned to Lanaza's case (Rojas is deceased, and this action continues against her Estate, hereinafter "Estate"). Our Kids, Inc. ("Our Kids") is a private corporation under a contract with DCF to provide community-based foster care services in Miami–Dade County. Frances Allegra ("Allegra") is the executive director of Our Kids. One Hope United, Inc. ("One Hope") is a private corporation under subcontract with Our Kids to provide foster case management services. Nakeitha Sweeting Hodrick ("Hodrick") was the vice president and director of One Hope at all material times.

### LEGAL STANDARD: MOTIONS TO DISMISS

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its own face."

*Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal quotation omitted). While a court must accept well-pled facts as true, it need not assume the truth of conclusory allegations, nor are plaintiffs entitled to have the court view unwarranted deductions of fact or argumentative inferences in their favor. *See, e.g., Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action" are insufficient to survive a motion to dismiss); *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *Fin. Sec. Assurance, Inc. v. Stephens, Inc.,* 500 F.3d 1276, 1282 (11th Cir.2007) (per curiam). In order to be "minimally sufficient," a complaint must put the defendant on notice of the claims against him. *Bailey v. Janssen Pharmaceutica, Inc.,* 288 Fed.Appx. 597, 603 (11th Cir.2008); *see also City of Fort Lauderdale v. Scott,* 773 F.Supp.2d 1355, 1362 (S.D.Fla.2011) ("Under the *Iqbal* standard, a plaintiff must allege facts which put each defendant on notice of the claims against him."). Moreover, a complaint will not suffice if it tenders " 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal,* 129 S.Ct. at 1949 (2009) (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955 (2007)); *see also id.* at 1945 (holding that well-pled complaint "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation" (citing *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955)). The Supreme Court also held that this standard applies to all civil actions. *Id.* at 1953.

The Eleventh Circuit has held that "*[p]ro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Shuler v. Ingram & Assocs.,* 441 Fed.Appx. 712, 717 n. 3 (11th Cir.2011) (quoting *Boxer X v. Harris,* 437 F.3d 1107,

1110 (11th Cir.2006)); *Milton v. Turner*, 445 Fed.Appx. 159, 161–62 (11th Cir.2011) (quoting *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir.2008)). However, "the leniency afforded *pro se* litigants does not give courts license to serve as de facto counsel or to rewrite an otherwise deficient pleading in order to sustain an action." *Shuler*, 441 Fed.Appx. at 717 (citation omitted).

### CLAIMS OF LANAZA

In her ten-count Second Amended Complaint, Lanaza brings the following claims: (1) claims for negligence against Our Kids, One Hope, and DCF, 2d Am. Compl. 19:1, 23:15, 44:11 (Counts I, II, IX); (2) claims under Fla. Stat. § 393.13 against Our Kids, One Hope, and DCF, *Id.* at 28:4, 30:1, 48:16 (Counts III, IV X); (3) claims under 42 U.S.C. § 1983 against Our Kids, Allegra, One Hope, Hodrick, and the Estate, *Id.* at 31:19, 35:5, 39:12 (Counts V, VI, VII); and (4) a claim for "estoppel/restitution" against DCF and Our Kids, *Id.* at 42:7 (Count VIII).

Lanaza alleges that DCF failed to place her in a home for two weeks, resulting in her being left in a shelter for longer than intended under applicable standards; that DCF and Rojas kept her in a group home despite legal requirements and prevailing practices prioritizing placement with relatives; that DCF failed to ensure that an effective case plan was in effect, and failed to ensure that she received developmental services during her time in foster care; that DCF and Rojas allowed her to deteriorate in the Bartley group home, leading to medical and developmental harm that DCF and Rojas further failed to evaluate and treat; and that DCF failed to timely terminate parental rights and facilitate adoption. 2d Am. Compl. ¶¶ 29, 31, 35, 37, 39, 4647, 50. Additionally, Lanaza alleges that on March 3, 1998, DCF represented

to Woodburn that she would receive the foster care board rate and Lanaza's Social Security disability benefits ("SSI benefits") upon becoming her caregiver. Lanaza states DCF intended to induce Woodburn's reliance, and that Woodburn did in fact rely upon DCF's statement. She then alleges that in July of 2002, DCF applied to become and did become the representative payee for her SSI benefits, changing its position, and applied the money to its own institutional benefit, causing her to suffer as a result of a lack of sufficient financial support. 2d Am. Compl. ¶¶ 40–41, 5657.

Lanaza alleges that Our Kids reviewed her case file in 2005 "as part of the transition to community based care," and found "serious deficiencies" in the case's handling. 2d Am. Compl. ¶ 62. Additionally, she alleges that on January 23, 2008, Our Kids replaced DCF as the representative payee of Lanaza's SSI benefits by misrepresenting that she did not live with relatives, despite the fact that she lived with Woodburn at the time, and that this interception of her SSI benefits caused Lanaza to suffer. 2d Am. Compl. ¶¶ 66–67.

Lanaza makes further allegations against all Defendants: that all Defendants failed to inform Woodburn about her medical condition, resulting in emergency surgery in 2004; that all Defendants failed to secure Medicaid Waiver Benefits throughout the sixteen years she was in foster care; that all Defendants failed to identify her needs and appropriate service providers; that all Defendants allowed her to be abused in the Bartley group home; that all Defendants failed to ensure necessary medical evaluations or provide support services during her time in Woodburn's care, from 1999 to 2010; and that all Defendants failed to involve Woodburn in the case planning process. 2d Am. Compl. ¶¶ 5861, 63, 65, 68, 70, 72.

*ANALYSIS AND CONTROLLING AU-
THORITY ON MOTIONS TO DIS-
MISS LANAZA'S SECOND
AMENDED COMPLAINT BY OUR
KIDS, ONE HOPE, ALLEGRA, AND
HODRICK*

## I. COUNTS I AND II: NEGLIGENCE CLAIMS AGAINST OUR KIDS AND ONE HOPE

In Counts I and II of her Second Amended Complaint, Lanaza specifically alleges that Our Kids and One Hope were negligent in duties owed to her while she was in state custody. She states that Our Kids and One Hope owed her twenty-eight and twenty-six different duties of care, respectively, under various provisions of Florida state and regulatory law. 2d Am. Compl. ¶ 79, 83. In each count, Lanaza states that each Defendant "through its agents and/or employees, breached said non-discretionary, non-delegable duties," 2d Am. Compl. 80, 84, and then alleges harm as a result. 2d Am. Compl. ¶¶ 81, 85. Both Our Kids and One Hope assert that Lanaza has failed to sufficiently state a claim for negligence pursuant to Fed. R.Civ.P. 12(b)(6).

To state a claim for negligence under Florida law, a plaintiff must allege that the defendant owed her a duty of care, that the defendant breached that duty, and that the breach caused plaintiff to suffer damages. *Nettles v. City of Leesburg Police Dep't*, 415 Fed.Appx. 116, 122 (11th Cir.2010). The *Iqbal/Twombly* pleading standard, set forth above, also applies to negligence actions. *Iqbal*, 129 S.Ct. at 1953.

In her Counts, Lanaza properly alleges the elements of a common law action for negligence: duties owed by Our Kids and One Hope, various breaches of those duties, and harm as a result. Accepted as true, her general allegations meet the "minimally sufficient" standard set forth above, putting the Defendants on reasonable notice of the claims against them. *Bailey*, 288 Fed.Appx. at 603. Lanaza alleges that Our Kids and One Hope, as organizations charged with her well-being, owed her a duty, among others, to reasonably ensure her health, welfare, and safety while she was in their legal custody, and to ensure that she received adequate financial support and services. 2d Am. Compl. ¶¶ 79(c), 79(p)-(q). 83(a), 83(n)-(o). She further alleges conduct on the part of Our Kids and One Hope that, taken as true, contravenes these alleged duties, such as failures throughout her time in foster care to secure Medicaid Waiver benefits, identify service providers, medically evaluate and treat her disabilities, or offer her support services. 2d Am. Compl. ¶¶ 60–61, 65, 68, 70. The harm allegedly suffered as a result is also evident on the face of the Complaint: Lanaza states that her condition deteriorated due to this alleged lack of support, leading to permanent physical and developmental damage. *Id.* Taken as true, these allegations reasonably support an inference that Our Kids and One Hope were negligent in the exercise of their duties to Lanaza.

In their Motions, Our Kids and One Hope assert that the Complaint should be dismissed for failing to allege exactly how they breached these duties owed, or to specifically distinguish the exact time of the acts or omissions leading to the breach. The Defendants' asserted pleading standard, however, calls for more than the facial plausibility required by the case law, under which such detailed factual allegations are not required. *Iqbal*, 129 S.Ct. at 1949. A facially plausible claim must be more than merely "possible," but need not rise to a "probability requirement" in order to be minimally sufficient. *Id.* Lanaza's allegations amply paint the picture of

a minor with ongoing health and safety needs in the care of the various Defendants throughout her childhood. Our Kids and One Hope were allegedly responsible for Lanaza's well-being at some point during the sixteen years covered in the Complaint. Therefore, Lanaza's allegations that all Defendants failed to meet her continuing needs at all relevant times throughout this period necessarily implicates Our Kids and One Hope. Given the alleged factual background, such a claim is facially plausible, and need not delve into the specificity desired by Our Kids and One Hope.

Moreover, Lanaza goes beyond a merely plausible standard with regard to certain claims, providing more specificity to support her general allegations. For example: (1) she details specific medical records the Defendants allegedly failed to relay to Woodburn, such as her allergies and her parents' medical history; (2) she notes specific services that the Defendants allegedly failed to provide, such as physical therapy and leg bracing; (3) she cites specific Medicaid Waiver sums, alleging a loss of services of up to $70,000 per year in value; and (4) she references multiple surgeries required in 2007 as a result of a lack of medical attention. These allegations go above and beyond the minimal sufficiency required by the *Iqbal/Twombly* pleading standard, and are sufficient to put Our Kids and One Hope on reasonable notice of Lanaza's claims against them.

Taken as true, Lanaza's allegations implicate Our Kids and One Hope in a series of alleged omissions that reasonably support an inference that they breached an alleged duty to ensure her health, safety, and welfare, both physically and financially. This claim is plausible on its face; therefore, Our Kids and One Hope's Motions to dismiss Counts I and II of Lanaza's Second Amended Complaint are **denied.**

## II. COUNTS III AND IV: SECTION 393.13 CLAIMS AGAINST OUR KIDS AND ONE HOPE

### A. Sufficiency of Pleading

In Counts III and IV, Lanaza alleges that Our Kids and One Hope violated her rights under Fla. Stat. § 393.13 (2011), the Bill of Rights of Persons with Developmental Disabilities. These Counts consist of one paragraph listing duties allegedly owed under § 393.13, 2d Am. Compl. ¶¶ 87, 91, another stating that Defendants owed those duties, 2d Am. Compl. ¶¶ 88, 92, and a final paragraph stating that Defendants "breached said duty," and that as a result Lanaza did not receive adequate care and suffered deterioration in her health. 2d Am. Compl. ¶¶ 89, 93. As with Lanaza's negligence claims, Our Kids and One Hope both assert that she has failed to sufficiently state a claim pursuant to Fed. R.Civ.P. 12(b)(6).

 Section 393.13 provides numerous rights and privileges to persons with developmental disabilities and "clients," which include individuals in foster care facilities. Fla. Stat. § 393.13(4) (citing Fla. Stat. § 393.067 (2011) for definition of covered "clients"). Subsection (5) states that "[a]ny person who violates or abuses any rights or privileges of persons with developmental disabilities provided by this chapter is liable for damages as determined by law." *Id.* at § 393.13(5). The existence of a private right of action under § 393.13 was acknowledged in *Baumstein v. Sunrise Cmty., Inc.,* 738 So.2d 420 (Fla. 3d DCA 1999). As this is a private civil action, the *Iqbal/Twombly* pleading standard applies to allegations of a violation of § 393.13 rights.

■ Examining Counts III and IV, this Court finds that Lanaza has misinterpreted some of her authorities. In each Count, Lanaza alleges ten different "rights" owed to her under various provisions of the statute. 2d Am. Compl. ¶¶ 87, 91. She finds the source of eight of the ten rights in subsection (2) of the statute. Subsection (2), however, does not expressly set forth rights under § 393.13, but the "Legislative intent" of the statute. Fla. Stat. § 393.13(2). Here, Lanaza characterizes aspirational intent as right. In fact, the actual rights of disabled individuals are set forth later in subsections (3) and (4). *Id.* at § 393.13(3)-(4). Subsection (5) states clearly that "any person who violates or abuses any *rights and privileges ... provided by this chapter* is liable for damages as determined by law." *Id.* at § 393.13(5) (emphasis added). Thus, any duties owed to Lanaza under the statute must arise from the rights set forth in subsections (3) and (4), not the intent of section (2). Of ten alleged duties, she only bases two upon actual rights created in the statute: (1) the right to social interaction and community participation, Fla. Stat. § 393.13(3)(e), 2d Am. Compl. ¶¶ 87(h), 92(h); and (2) the right to receive prompt, appropriate medical care, Fla. Stat. § 393.13(4)(c), 2d Am. Compl. ¶¶ 87(j), 92(j).

■ Of these actual rights, Lanaza does not allege any facts suggesting that Our Kids and One Hope violated her right to social interaction and community participation. She does, however, allege that that all Defendants: (1) failed to inform Woodburn of her relevant medical history; (2) failed to secure Medicaid Waiver Benefits throughout her sixteen years in foster care; (3) failed to identify service providers for her; and (4) failed to ensure that she received necessary medical treatment throughout her twelve years in Wood-

burn's care. 2d Am. Compl. ¶¶ 59-61, 65, 70. Our Kids and One Hope are implicated in these allegations relating to Lanaza's right to receive prompt, appropriate medical care under § 393.13(4)(c). Our Kids and One Hope argue again that Lanaza's Complaint is insufficient for a failure to distinguish the exact timing or precise actions and omissions of leading to the alleged failures. As discussed above, however, the standard the Defendants ask this Court to apply is more rigorous than that required by law. Taken as true, Lanaza's specific allegations with regard to her right to receive medical care are sufficient to put Our Kids and One Hope on reasonable notice of the scope of the claims against them. *See supra; see also Bailey,* 288 Fed.Appx. at 603.

The court finds that the specific allegations described above are sufficient to support a facially plausible claim that Our Kids and One Hope violated Lanaza's right to receive prompt and appropriate medical care under § 393.13(4)(c). Therefore, to the extent that the Motions seek to dismiss her claim of a violation of her right to receive prompt and appropriate medical care under § 393.13(4)(c), the Motions are denied in part.

■ However, to the extent that the Motions seek to dismiss her claim of a violation of her right to social interaction and community participation, Fla. Stat. § 393.13(3)(e), the Motions to Dismiss are granted without prejudice.

To the extent to Motions seek to dismiss her claim for violating "Legislative intent" of the statute as set forth in Fla. Stat. § 393.13(2), the Motions are granted with prejudice.

### B. Statute of Limitations

In its Motion, One Hope adopts the legal arguments of Our Kids and DCF. While Our Kids and One Hope did not argue that

Lanaza's § 393.13 claims were time-barred by the statute of limitations, DCF made such a claim. As set forth below, DCF's motion to dismiss Lanaza's § 393.13 claims is dismissed for other reasons, *see infra;* however, by adoption, One Hope makes the same arguments, warranting consideration here.

■■■ The Eleventh Circuit has held that a statute of limitations bar is an affirmative defense, and that plaintiffs are not required to negate such defenses in the Complaint. *La Grasta v. First Union Secs., Inc.,* 358 F.3d 840, 845 (11th Cir. 2004). Dismissal on statute of limitations grounds "is appropriate only if it is 'apparent from the face of the complaint' that the claim is time-barred." *Sec'y of Labor v. Labbe,* 319 Fed.Appx. 761, 764 (11th Cir. 2008). *See also Tello v. Dean Witter Reynolds, Inc.,* 410 F.3d 1275, 1288 (11th Cir.2005) (same); *La Grasta,* 358 F.3d at 845 (same); *Omar ex rel. Cannon v. Lindsey,* 334 F.3d 1246, 1251 (11th Cir.2003) (noting that Rule 12(b)(6) dismissal is appropriate "if noncompliance with the statute of limitations is apparent on the face of the complaint"). The court in *Labbe* went on to hold that dismissal is only appropriate if a plaintiff "can prove no set of facts that toll the statute." *Labbe,* 319 Fed. Appx. at 764 (quoting *Tello,* 410 F.3d at 1288 n. 13).

■■■ The applicable statute of limitations for an action founded on statutory liability is four years. Fla. Stat. 95.11(3)(f) (2011). The limitations period is statutorily tolled in some circumstances, particularly the adjudicated incapacity of the plaintiff before the cause of action accrued and the minority of the plaintiff during any period of time in which a parent, guardian, or guardian ad litem does not exist. Fla. Stat. § 95.051(1)(d), (h) (2011). Even where tolling applies in either case, however, the action must be commenced within seven years of the accrual of the cause of action. *Id.* Lanaza is still a minor as of this writing, and in her Complaint she has alleged that she was "adjudicated dependent" around August 31, 1994, and was in the legal custody of the State of Florida with no legal guardian until April 7, 2010. 2d Am. Compl. ¶¶ 28, 76. Thus, she has plainly alleged facts making it plausible that the seven-year, tolled limitations period applies.

■■■ As shown above, Lanaza has sufficiently pled violations of her right to receive prompt, appropriate medical care under § 393.13(4)(c). Any causes of action that, on the face of the complaint, accrued outside of the seven-year limitations period are time-barred. This requires a determination of when Lanaza's causes of action accrued. The Federal Rules of Civil Procedure provide that the claims in an amended pleading relate back to the date of the original pleading when the amendment asserts a claim or defense arising out of conduct set forth in the original pleading. Fed.R.Civ.P. 15(c). However, the Eleventh Circuit has held that "Congress did not intend Rule 15(c) to be so broad as to allow an amended pleading to add an entirely new claim based on a different set of facts." *Dean v. United States,* 278 F.3d 1218, 1221 (11th Cir.2002); *see also Maraj v. N. Broward Hosp. Dist.,* 989 So.2d 682, 685 (Fla. 4th DCA 2008) ("[A] party cannot defeat the statute of limitations by filing a whole new cause of action and labeling it as an amended complaint."). In this instance, the original and First Amended Complaints only made allegations regarding Lanaza's SSI benefits and other financial benefits allegedly intercepted by the Defendants. *See* ECF Nos. 1, 40. Importantly, there were no allegations regarding failures on the part of any Defendants to provide medical services. As these facts were alleged for the first time in the Sec-

ond Amended Complaint, Lanaza's claims under § 393.13 do not relate back to the original Complaint. Therefore, where her § 393.13 claims are not time-barred, Lanaza would only be able to recover for violations that occurred after May 4, 2004 (seven years before filing of the Second Amended Complaint).

Lanaza has clearly alleged violations of her rights occurring within the applicable statutory period. For example, Lanaza alleges failure by the Defendants to provide Woodburn with her medical history until emergency surgery was required on June 5, 2004, and that further alleged neglect led to the need for multiple surgeries in 2007. Lanaza further alleges that all Defendants failed to medically evaluate and treat her throughout her time in Woodburn's care, and that all Defendants failed to secure Medicaid Waiver benefits throughout her time in foster care. These alleged violations occurred both before and during the applicable limitations period. Based on these allegations, it is not clear on the face of Lanaza's complaint that her claims under § 393.13 relating to her right to receive prompt, appropriate medical care are time-barred. Therefore, dismissal of her cause of action at this phase is inappropriate.

## III. COUNTS V AND VI: SECTION 1983 CLAIMS AGAINST OUR KIDS, ONE HOPE, ALLEGRA, AND HODRICK

In Counts V and VI, Lanaza alleges a violation of her constitutional rights under 42 U.S.C. § 1983. In both Counts, she alleges that One Hope, Hodrick, Our Kids, and Allegra acted under color of state law, 2d Am. Compl. ¶¶ 96, 109, that children in foster care "had the Constitutional right to be safe and free from unreasonable risk of harm," 2d Am. Compl. ¶¶ 99, 112, and that the four Defendants "were deliberately in-

different and/or acted with reckless disregard to [Lanaza's needs]," 2d Am. Compl. ¶¶ 100, 113. She then alleges that the four Defendants "established and enforced a custom, policy, or practice which:"

(1) allowed children to have their parents' rights terminated while being confined in foster care for longer than permitted by law, 2d Am. Compl. ¶¶ 101(a), 114(a);

(2) allowed children in foster care to remain there longer than in other Florida districts, 2d Am. Compl. ¶¶ 101(b), 114(b);

(3) prioritized the financial interests of the corporations over the needs of children, 2d Am. Compl. ¶¶ 101(c), 114(e);

(4) resulted in failure to provide children with available services to meet their needs, 2d Am. Compl. ¶¶ 101(d), 114(g); and

(5) rendered Lanaza ineligible for available financial assistance to meet her needs, 2d Am. Compl. ¶¶ 101(f), 114(i).

Lanaza specifically alleges that Our Kids and Allegra established and enforced policies and customs which: (1) maintained children in foster care for a period longer than permitted by law, 2d Am. Compl. ¶ 114(c); (2) resulted in a higher percentage of children in foster care not achieving permanency compared to other State foster care districts, 2d Am. Compl. ¶ 114(d); and (3) allocated extensive funding towards salaries, bonuses, and "trappings" while ignoring the needs of disabled children, 2d Am. Compl. ¶ 114(f).

Finally, Lanaza alleges that all four Defendants were deliberately indifferent to her needs, and that this indifference included a failure to train, supervise, and monitor caseworkers. 2d Am. Compl. ¶¶ 100, 113, 101(e), 114(h), 104, 117. In their motions, all four Defendants have asserted that Lanaza has failed to state a

claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6).

 Section 1983 creates a private right of action against any person who, under color of state action, deprives another person of their civil rights. 42 U.S.C. § 1983 (2011). To succeed on a claim under § 1983, a plaintiff must establish offending conduct that was committed by a person acting under color of state law, and that the conduct deprived her of rights secured by the Constitution or laws of the United States. *Kivisto v. Miller, Canfield, Paddock and Stone, PLC*, 413 Fed.Appx. 136, 139 (11th Cir.2011) (citing *Fullman v. Graddick*, 739 F.2d 553, 561 (11th Cir. 1984)).

 Our Kids and Allegra argue for a more stringent pleading standard than *Iqbal/Twombly*, citing *Keating v. City of Miami*, 598 F.3d 753, 762–63 (11th Cir. 2010). While the Eleventh Circuit may have once set a higher bar for pleading § 1983 claims, it has since reversed that position, stating that "[w]e no longer apply a heightened pleading standard to claims brought pursuant to § 1983." *Milton v. Turner*, 445 Fed.Appx. 159, 161–62 (11th Cir.2011); *see also Randall v. Scott*, 610 F.3d 701, 708 n. 2 (11th Cir.2010) (stating after *Keating* that "whatever requirements our heightened pleading standard once imposed have since been replaced by those of the *Twombly–Iqbal* plausibility standard"). Thus, the *Iqbal/Twombly* standard applies to this claim.

### A. Section 1983 Claims Against One Hope and Our Kids

 While private entities are not usually considered state actors, a private entity may be considered a state actor by certain standards, including the "public function" test. *Martinez v. Ashtin Leasing, Inc.*, 417 Fed.Appx. 883, 885 (11th Cir.2011) (citing *Focus on the Family v.*

*Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1276–77 (11th Cir.2003)). This test is satisfied when private actors perform a function that is traditionally the exclusive prerogative of the state. *Id.* The Florida Legislature has stated that the State of Florida has traditionally been responsible for providing foster care services: In authorizing outsourcing of foster care services to private entities, it provided that "the state has traditionally provided foster care services to children who have been the responsibility of the state." Fla. Stat. § 409.1671(1)(f)(1) (2011). Thus, at least for § 1983 purposes, One Hope and Our Kids qualify as acting under color of state law.

 Courts have been careful to limit the extension of § 1983 liability. Private entities cannot be held liable for violations vicariously. *See Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir.1997) ("The Supreme Court has interpreted the language of § 1983 to require that liability attaches only to those actors who violate a plaintiff's rights."); *see also Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("[A] municipality cannot be held liable *solely* . . . on a *respondeat superior* theory."); *cf. Buckner*, 116 F.3d at 452 (extending *Monell* to private entities performing municipal functions). When a plaintiff brings suit under § 1983 against a private entity under contract with a municipality, she must additionally allege that the violation of her rights was the result of an "official policy or custom." *Whittier v. City of Sunrise*, 395 Fed.Appx. 648, 650 (11th Cir.2010); *see also German v. Broward Cnty. Sheriff's Office*, 315 Fed.Appx. 773, 776 (11th Cir.2009) ("[T]here must be a policy or custom by which the constitutional deprivation was inflicted."); *Buckner*, 116 F.3d at 453 ("[T]he requirement of a municipal policy or custom constitutes

an essential element of a § 1983 claim."). A policy or custom "is established by showing a persistent and widespread practice and an entity's actual or constructive knowledge of such customs, though the custom need not receive formal approval." *German*, 315 Fed.Appx. at 776 (citing *Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th Cir.1986)). Importantly, "normally random acts or isolated incidents are insufficient to establish a custom or policy." *German*, 315 Fed.Appx. at 776 (quoting *Depew*, 787 F.2d at 1499); *see also Barr v. Gee*, 437 Fed.Appx. 865, 873–74 (11th Cir.2011).

█ In light of the pleading standard set forth above and the applicable case law, Lanaza has alleged sufficient facts to support a facially plausible claim that her constitutional rights were violated by One Hope and Our Kids for the purposes of surviving a motion to dismiss. She alleges that One Hope and Our Kids violated her constitutional right to be safe and free from an unreasonable risk of harm while she was the state foster care system. Moreover, she alleges that these violations were the result of policies or customs of the Defendants. Lanaza alleges specifically that the Defendants established policies or customs of conduct that resulted in children remaining in foster care for longer than permitted by law, prioritized the financial interest of the corporations over the needs of children, and led to a failure to provide foster children with available services. Among these policies, Lanaza specifically asserts that One Hope and Our Kids failed to properly train, supervise, and monitor caseworkers. As a result of these alleged policies or customs, Lanaza claims that she did not receive adequate care or services, and that she was left to physically and emotionally deteriorate. This harm relates directly to her right to be safe from an unreasonable risk of harm.

One Hope and Our Kids argue that Lanaza's allegations of policy or custom do not sufficiently allege a widespread practice, and merely relate to conduct between the Defendants and Lanaza alone. To the contrary, Lanaza states throughout Counts V and VI that the alleged policies or customs of One Hope and Our Kids were directed at other dependent children in foster care as well as Lanaza. Moreover, she goes beyond a literal allegation of a widespread practice, alleging that the policies resulted in children in her district remaining in foster care longer than children in other districts. These allegations describe more than a mere isolated incident, and provide factual support for her claim that a policy or custom existed. Thus, Lanaza has offered factual allegations not only supporting a facially plausible inference that such a policy or custom existed, but that it was sufficiently widespread as well.

On the basis of these pleadings, One Hope and Our Kids are reasonably on notice of Lanaza's claims under § 1983: that they exercised official policies or customs resulting in foster children like her remaining in foster care for longer than legally permitted, prioritized the Defendants' financial interests over the needs of dependent children, and failed to provide children with adequate available services to meet their needs. These allegations are sufficient to survive a motion to dismiss. Therefore, One Hope and Our Kids' motions to dismiss Counts V and VI of Lanaza's Second Amended Complaint are **denied with regard to One Hope and Our Kids.**

**B. Section 1983 Claims Against Hodrick and Allegra**

Lanaza bases her claims against Hodrick and Allegra on the same specific

allegations set forth above with reference to One Hope and Our Kids. *See supra.*

■■■■■ As noted above, federal courts have sought to limit the extension of liability under § 1983. Along these lines, supervisory individuals cannot be held liable under § 1983 for the unconstitutional acts of their subordinates on the basis of vicarious liability alone. *German v. Broward Cnty. Sheriff's Office,* 439 Fed.Appx. 867, 869–70 (11th Cir.2011) (quoting *Hartley v. Parnell,* 193 F.3d 1263, 1269 (11th Cir.1999)). Instead, a supervisory official can only be held liable for the actions of her subordinates under § 1983 if she "personally participates in the act" causing the violation or where a "causal connection" exists between her conduct and the violation by her subordinates. *Am. Fed'n of Labor and Cong. of Indus. Orgs. v. City of Miami, Fla.,* 637 F.3d 1178, 1190 (11th Cir. 2011) (citing *Braddy v. Fla. Dep't of Labor and Emp't Sec.,* 133 F.3d 797, 802 (11th Cir.1998)). A "causal connection" may be shown in one of three ways:

> by evidence of (1) "a custom or policy that results in deliberate indifference to constitutional rights," (2) "facts that support an inference that the supervisor[ ] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so," or (3) "a history of widespread abuse" that notified the supervisor of the need to correct the alleged deprivation, but [s]he failed to do so.

*Campbell v. Johnson,* 586 F.3d 835, 840 (11th Cir.2009) (quoting *West v. Tillman,* 496 F.3d 1321, 1328–29 (11th Cir.2007)). For a history of abuse to be widespread enough to put the supervisor on notice, the abuse must be "obvious, flagrant, rampant,

and of continued duration, rather than isolated occurrences." *Doe v. School Bd. of Broward Cnty., Fla.,* 604 F.3d 1248, 1266 (11th Cir.2010). This standard of deliberate indifference is extremely rigorous. *Mann v. Taser Int'l Inc.,* 588 F.3d 1291, 1308 (11th Cir.2009); *Gonzalez v. Reno,* 325 F.3d 1228, 1234 (11th Cir.2003).

Lanaza has not alleged that Defendants personally participated in any act causing a deprivation of her constitutional rights, or even that they personally made any decisions with regard to her.[3] Thus, her § 1983 claim against these individuals must be based on one of the three causal connections between the conduct and the deprivation.

■■■■■ A causal connection may first be established by alleging an official custom or policy that results in deliberate indifference to constitutional rights. As discussed above, Lanaza has sufficiently alleged that One Hope and Our Kids established various official policies or customs that violated her constitutional rights. *See supra.* However, while these allegations are minimally sufficient to support an inference that such widespread policies or customs existed and resulted in the harm alleged, the standard as it applies to supervisory officials calls for customs and policies resulting in *deliberate indifference* to a plaintiff's constitutional rights. *Campbell,* 586 F.3d at 840. Aside from expressly stating that the Defendants "were deliberately indifferent" to her rights, Lanaza does not assert that the alleged policies or customs were implemented with deliberate indifference or reckless disregard for her rights. Without further factual allegations supporting her statements, Lanaza's literal assertions of deliberate indifference are not

---

**3.** While Lanaza alleges that Hodrick and Allegra had the authority to make decisions concerning individual children "when required

or requested," 2d Am. Compl. ¶¶ 19(c), 23(g), she does not allege that such decision was ever required or requested.

allegations of fact so much as legal conclusions, which need not be accepted as true for the purposes of a motion to dismiss. *See, e.g., Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action" insufficient to survive motion to dismiss). Thus, with regard to Hodrick and Allegra's supervisory roles, Lanaza has failed to sufficiently allege a policy or custom resulting in deliberate indifference that can serve as a causal connection between their conduct and a violation of her rights.

Second, a causal connection may be established by allegations supporting an inference that the defendant either directed subordinates to act unlawfully or knew that their subordinates would act unlawfully and failed to stop them from doing so. Lanaza does not allege that Hodrick and Allegra directed anyone to act unlawfully. She does, however, allege at several points that that they were "deliberately indifferent," "acted with reckless disregard," and [knew] that they were exposing children ... to a substantial risk of serious harm." 2d Am. Compl. ¶¶ 100, 113, 101(e), 114(h), 102, 116, 10405, 11718. Of these assertions, all but two are conclusory statements alleging indifference without any factual support. Lanaza alleges in paragraphs 100 and 113 that Defendants' deliberate indifference or recklessness was evidenced by a failure to properly train, supervise, and monitor caseworkers. 2d Am. Compl. ¶¶ 100, 113. This somewhat supports an inference that Hodrick and Allegra knew that unlawful action would take place and failed to stop it; however, the Eleventh Circuit has expressly held that *supervisory* liability based upon a failure to train subordinates is subject to an additional inquiry: A supervisor cannot be held liable for "mere negligence" in training and supervision.

*Barr v. Gee,* 437 Fed.Appx. 865, 875 (11th Cir.2011). Instead, liability must be based upon subjective knowledge. *See Am. Fed'n,* 637 F.3d at 1189 (holding that to establish deliberate indifference on basis of failure to train, plaintiff must put forward "some evidence that the municipality was aware of the need to train or supervise its employees in a particular area," which is "difficult"). Here, Lanaza has only alleged a "failure" to train and supervise, not that Defendants were on notice or actually knew that any specified training was needed. Thus, she has not alleged sufficient facts supporting an inference that Hodrick and Allegra knew unlawful conduct would result from a failure to train.

Moreover, Lanaza's allegations in this regard present an issue of causation. Even if her allegations could support an inference that Hodrick and Allegra knew unlawful conduct would result from a failure to train, a "causal connection" still requires that the conduct *cause* the deprivation. Lanaza does not allege that any deprivations of her rights were caused by poorly-trained or poorly-supervised caseworkers. Thus, she has not alleged sufficient facts supporting an inference that Defendants knew that their subordinates would act unlawfully and failed to act.

Finally, a causal connection can be established by allegations of a history of widespread abuse that notified the defendant of the need to correct the alleged deprivation, and a subsequent failure to do so. The pattern of abuse must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences. There are simply no allegations in the Complaint alleging such an obvious or rampant history of widespread abuse sufficient to put Hodrick and Allegra on notice of the alleged deprivation of Lanaza's rights.

Lanaza does not allege any personal participation by Hodrick and Allegra in a deprivation of her constitutional rights. Moreover, under the relevant case law she has not alleged a sufficient causal connection between a deprivation of her constitutional rights and the alleged conduct of Hodrick and Allegra. Therefore, she has failed to state a claim under § 1983, and Counts V and VI of Lanaza's Second Amended Complaint are **dismissed without prejudice with regard to Hodrick and Allegra,** with leave to amend the Complaint alleging either personal participation by *Hodrick v. Allegra* in a deprivation of her rights, or a proper causal connection between the alleged conduct of Hodrick and Allegra and such a deprivation.

## IV. COUNT VIII: "ESTOPPEL/RESTITUTION" CLAIM AGAINST OUR KIDS

In Count VIII Lanaza brings a claim of promissory estoppel against Our Kids, seeking amounts of money allegedly promised to her under the ICPC. Lanaza alleges that in 2008, Our Kids, acting as an agent of DCF, applied to become and did become the representative payee of her SSI benefits, doing so by misrepresenting that she did not live with relatives.

■■■■ Under Florida law, in order to demonstrate estoppel, the following elements must be pled: (1) a representation as to a material fact that is contrary to a later-asserted position; (2) reliance on that representation; and (3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon. *State v. Harris*, 881 So.2d 1079, 1084 (Fla.2004). It is clear on the face of the Complaint that Lanaza has not pled even the basic elements of a promissory estoppel action against Our Kids. The alleged representation upon which she bases her action is the representation by DCF in 1999 that Woodburn would receive the proper benefits on her behalf. Notably, Lanaza never alleges that Our Kids made any representations on which she relied. Thus, Lanaza has not properly pled the first element of a promissory estoppel claim.

■■■■ Count VIII also states that it is a claim for restitution alongside the claim for promissory estoppel. If Lanaza intends by this to claim restitution as a remedy for her claim of promissory estoppel, she still has not sufficiently pled a claim for promissory estoppel, as demonstrated above. It is unclear, however, whether or not she intended to raise a separate claim of restitution against Our Kids. Generally, a claim for restitution—also known as "unjust enrichment"—requires a showing that: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it. *Chamberlain v. Integraclick, Inc.,* No. 4:10–CV–00477, 2011 WL 2118699, at *5 (N.D. Fla. May 25, 2011) (citing *Della Ratta v. Della Ratta,* 927 So.2d 1055, 1059 (Fla. 4th DCA 2006)).

■■■■ If Lanaza had intended to assert such a separate claim against Our Kids, dismissal would still be appropriate for procedural reasons. Rule 10(b) of the Federal Rules of Civil Procedure states that a party must limit its claims "as far as practicable to a single set of circumstances," and that if practicable, "each claim founded on a separate transaction or occurrence ... must be stated in a separate count or defense." Fed.R.Civ.P. 10(b). It is generally understood that this Rule sets forth a "one claim per count" rule. *Solar Star Sys. LLC v. Bellsouth*

*Telecomms., Inc.,* No. 10–21105–CIV, 2011 WL 3648267, at *6 (S.D.Fla. Aug. 15, 2011); *see also City of Fort Lauderdale v. Scott,* No. 10–61122–CIV, 2011 WL 3157206, at *4 (S.D.Fla. Jul. 26, 2011) (finding it "insufficient to entitle a claim an 'Implied Right of Action under [multiple statutes]' and not specify in the claim under which particular ... law a party is proceeding"). Here, had Lanaza attempted to assert multiple claims at once, she would have clearly violated this rule.

Regardless, Lanaza has failed to sufficiently state a cause of action for promissory estoppel against Our Kids. Therefore, Count VIII of Lanaza's Second Amended Complaint is **dismissed without prejudice with regard to Our Kids,** with leave to amend the Complaint properly alleging a cause of action against Our Kids.

## ANALYSIS AND CONTROLLING AUTHORITY ON DCF'S MOTION TO DISMISS LANAZA'S SECOND AMENDED COMPLAINT

### I. COUNT VIII: "ESTOPPEL/RESTITUTION" CLAIM AGAINST DCF

In Count VIII, as with Our Kids, Lanaza brings a claim for promissory estoppel against DCF. Lanaza specifically alleges that in 1999, DCF promised Woodburn in writing through the ICPC that Woodburn, on Lanaza's behalf, would receive specific financial assistance, including the foster care board rate, Medicaid benefits, and SSI benefits. 2d Am. Compl. ¶¶ 133, 136. Lanaza alleges that DCF knew or reasonably should have known that this promise would induce reliance on Woodburn's part, 2d Am. Compl. ¶ 134, and that Woodburn, on Lanaza's behalf, did in fact rely upon the promise in asserting an ability to meet her needs as her primary caregiver. 2d Am. Compl. ¶ 136. Lanaza then alleges that in 2002, DCF applied to become and did become her registered payee of SSI

benefits, and that as a result, the money directed to Woodburn was reduced by at least 30%, causing Lanaza's needs to not be adequately met. 2d Am. Compl. ¶¶ 137–39.

As discussed above with regard to Our Kids, under Florida law a claim for promissory estoppel requires: (1) a representation as to a material fact that is contrary to a later-asserted position; (2) reliance on that representation; and (3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon. *State v. Harris,* 881 So.2d 1079, 1084 (Fla.2004).

### A. Sufficiency of Pleading

■ Based on the above allegations, Lanaza has sufficiently pled the factual elements of a claim for promissory estoppel. DCF, however, asserts that she has not properly pled the elements of promissory estoppel as it applies to the government. Florida courts have long held that the theory of promissory estoppel may only be asserted against the government under "exceptional circumstances." *Fla. Dep't of Health and Rehab. Servs. v. S.A.P.,* 835 So.2d 1091, 1109 (Fla.2002); *Harris,* 881 So.2d at 1085; *State Dep't of Revenue v. Anderson,* 403 So.2d 397, 400 (Fla.1981); *N. Am. Co. v. Green,* 120 So.2d 603 (Fla.1959); *State Dep't of Health and Rehab. Servs. v. Law Offices of Donald W. Belveal,* 663 So.2d 650, 652 (Fla. 2d DCA 1995); *Macnamara v. Kissimmee River Valley Sportsmans' Ass'n,* 648 So.2d 155, 163 (Fla. 2d DCA 1994); *Ogden v. State Dep't of Transp.,* 601 So.2d 1300, 1302 (Fla. 3d DCA 1992); *Calusa Golf Inc. v. Dade Cnty.,* 426 So.2d 1165, 1167 (Fla. 3d DCA 1983); *Greenhut Constr. Co. v. Henry A. Knott, Inc.,* 247 So.2d 517, 524 (Fla. 1st DCA 1971). Such rare and exceptional circumstances must include "affirmative representations" or some "positive act" on

the part of a government officer on which a plaintiff has a right to rely. *S.A.P.*, 835 So.2d at 1109; *Hoffman v. State Dep't of Mgmt. Servs., Div. of Retirement*, 964 So.2d 163, 166 (Fla. 1st DCA 2007); *Wise v. Dep't of Mgmt. Servs., Div. of Retirement*, 930 So.2d 867, 873 (Fla. 2d DCA 2006); *Greenhut*, 247 So.2d at 524. Furthermore, the Florida Supreme Court has held that estoppel should not be invoked against the government in a way that interferes with the exercise of the government's sovereign power. *Trustees of Internal Imp. Fund v. Claughton*, 86 So.2d 775, 790 (Fla.1956).

■ The necessity of pleading exceptional circumstances at this stage need not be addressed; Lanaza has sufficiently done so. Here, she alleges that DCF made an express promise in 1999 that Woodburn, on her behalf, would receive specific financial assistance that she was entitled to receive. This alleges an affirmative representation by DCF inducing reliance on which Lanaza had a right to rely.

DCF contends both that the circumstances alleged are not exceptional enough to state a claim for estoppel, and that the act Lanaza seeks to estop—the insertion of DCF as SSI payee—is authorized by Florida law. Indeed, DCF is authorized both to act as representative payee of SSI benefits and to charge clients fees for services, collecting the fees from sources including funds for which DCF is designated the payee. *See* Fla. Stat. § 402.33(2)-(3) (2011). These sections provide:

> "The Department ... shall charge, assess, or collect ... fees for any service it provides to its clients,"

and,

> "[The Department] may serve as the representative payee in receiving [financial benefits for the client] and shall use

such benefits received to reduce the client's liability for fees assessed."

*Id.* § 402.17 also states that DCF shall "administer in trust" money received for the personal use of clients, and may withdraw such money for "payment of fees assessed." Fla. Stat. § 402.17 (2011). The U.S. Supreme Court has specifically held that a state may become a representative payee of SSI benefits and use said benefits to reimburse itself for costs of providing care to foster children. *See Wa. State Dep't of Soc. and Health Servs., et al. v. Keffeler, et al.*, 537 U.S. 371, 123 S.Ct. 1017, 154 L.Ed.2d 972 (2003). Thus, DCF argues, Lanaza attempts to estop it from exercising a function that it is fully authorized to exercise, an unexceptional circumstance.

DCF is correct in asserting its authority to become the representative payee of Lanaza's SSI benefits; however, accepting all of her factual allegations as true, she has stated more than this. She alleges not only that DCF inserted itself as representative payee of her SSI benefits, but that it also applied the money received "to its *exclusive* institutional benefit" 2d Amend. Compl. ¶ 56 (emphasis added). Notably, the same statutes that authorize DCF to become a representative payee clearly state that fees are to be charged for services provided to clients, and that "[f]ees shall be reasonably related to the cost of providing the service[s]." Fla. Stat. § 402.33(3). DCF has authority to collect fees from its clients' SSI benefits as payee, but only to effectively reimburse itself for services provided. Lanaza's allegation that the funds were applied to DCF's exclusive institutional benefit states that this was not the case. Taking the allegations as true, she seeks to enforce DCF's promise not to estop it from accepting SSI benefits as a payee, but to estop it from overstepping its legal authority and improperly retaining the benefits to. her det-

riment. These allegations, along with those of an affirmative representation by DCF on which Woodburn relied on Lanaza's behalf, appear to have sufficiently alleged exceptional circumstances as they are defined by Florida law, raising a plausible claim for promissory estoppel against DCF.

### B. Statute of Limitations

 DCF further asserts that Count VIII is time-barred by the applicable statute of limitations. As discussed above with regard to Lanaza's § 393.13 claims against One Hope, dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred. *Sec'y of Labor v. Labbe*, 319 Fed.Appx. 761, 764 (11th Cir.2008). The Eleventh Circuit has held that the statute of limitations for an action for estoppel is four years:

> Promissory estoppel is an "equitable action on a contract, obligation, or liability not founded on a written instrument," which must be commenced within four years from when the last element constituting the cause of actions occurs.

*Servicios De Almacen Fiscal Zona Franca Y Mandatos S.A. v. Ryder Int'l Inc.*, 264 Fed.Appx. 878, 881 (11th Cir.2008) (quoting Fla. Stat. §§ 95.11(3)(k) (2011)). As demonstrated above, Lanaza has alleged sufficient facts making it plausible that the seven-year tolled statute of limitations applies to her under Fla. Stat. § 95.051(1)(d), (h) (2011).

 This again raises the question of whether the seven-year period attaches to the time of the Second Amended Complaint (May 4, 2011), or to the time of the initial Complaint (March 30, 2009). Unlike her claims under § 393.13, Lanaza's claim for promissory estoppel does relate back to the original pleading under Fed.R.Civ.P. 15(c). DCF's actions with regard to the SSI benefit payments were alleged in the original Complaint. *See* ECF No. 1. Thus, Count VIII relates back to the original filing, and Lanaza's cause of action would have to accrue on or after March 30, 2002 (seven years before the filing of the original Complaint). This determination is critical, as the change in DCF's position allegedly occurred in July of 2002. 2d Am. Compl. ¶ 56. Therefore, as Count VIII relates back to March of 2002, all of the alleged conduct giving rise to Lanaza's claim for promissory estoppel occurred within the statutory period, and her claims are not time-barred on the face of the Complaint, making dismissal inappropriate on statute of limitations grounds.

Therefore, for the foregoing reasons, Lanaza has sufficiently alleged facts to support a facially plausible claim for promissory estoppel against DCF that is not clearly time-barred, and DCF's motion to dismiss Count VIII of Lanaza's Second Amended Complaint is **denied.**

### II. COUNT IX: NEGLIGENCE CLAIM AGAINST DCF

In Count IX, Lanaza specifically alleges that DCF was negligent in duties owed to her while she was in the legal custody of the State of Florida. She states that DCF owed her twenty-four different duties of care under various provisions of Florida state and regulatory law, 2d Am. Compl. ¶ 143, that DCF, "breached said ... duties," 2d Am. Compl. ¶ 144, and that she was harmed as a result. 2d Am. Compl. ¶ 145. Lanaza additionally alleges that she is notifying DCF of this claim through the Complaint "pursuant to § 768.28." 2d Am. Compl. ¶ 142.

 In alleging notice, Lanaza refers to Florida's Waiver of Sovereign Immunity in Tort Actions, Fla. Stat. § 768.28 (2011). To maintain a claim in tort against the

State or one of its agencies, a plaintiff must meet the requirements of § 768.28, which waives the government's sovereign immunity with respect to tort actions. The statute sets out mandatory procedures that one must follow before suing pursuant to the waiver. Notice to the state agency and the Department of Financial Services is required within three years of accrual of the cause of action before filing suit:

> An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also ... presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing.... The failure of the Department of Insurance or the appropriate agency to make final disposition of a claim within 6 months after it is filed shall be deemed a final denial of the claim for purposes of this section.

Fla. Stat. § 768.28(6)(a), (d) (2011).

■ Lanaza argues that in filing this suit, she is providing the requisite notice. However, the statute clearly forbids the institution of an action without prior notice, and the Complaint does not allege prior compliance with the notice provisions. Under Florida law, "not only must the notice be given before a suit may be maintained, but also the complaint must contain an allegation of notice." *Levine v. Dade Cnty. Sch. Bd.*, 442 So.2d 210, 213 (Fla.1983) (citing *Commercial Carrier Corp. v. Indian River Cnty.*, 371 So.2d 1010 (Fla.1979)); *see also Bloom v. Miami–Dade Cnty.*, 816 F.Supp.2d 1265, 1271–72 (S.D.Fla.2011) ("[A]s the complaint does not allege compliance with the mandatory notice provisions of Fla. Stat. § 768.28, the claims are subject to dismiss-

al." (citing *Levine*, 442 So.2d at 213)); *Zerbe v. Mascara*, No. 08–14107–CIV, 2009 WL 426287, at *3 (S.D.Fla. Feb. 20, 2009) (Finding § 768.28's requirements "a condition precedent to maintaining an action," and holding that defendant was entitled to summary judgment where "no presuit notification identifying the claims at issue in this case was ever sent."); *Fletcher v. City of Miami* 567 F.Supp.2d 1389, 1393 (S.D.Fla.2008) ("[Section 768.28(6)(a)] is a condition precedent to maintaining a lawsuit, and the complaint must contain an allegation that such notice was given."); *Eaton v. School Bd. of Palm Beach Cnty., Fla.*, No. 06–81123–CIV, 2007 WL 646967, at *4 (S.D.Fla. Feb. 27, 2007) (dismissing counts against school board, holding that while "plaintiff argues that in filing this suit, she has provided the required written notice ... [p]laintiff's contention is clearly incorrect."); *Borges v. City of West Palm Beach*, 858 F.Supp. 174, 179 (S.D.Fla.1993) (dismissing, noting that "although plaintiff has certified that a notice was properly given ... a final disposition by the State has not occurred, nor have six months passed since Plaintiff gave notice."); *Villa Maria Nursing and Rehab. Ctr., Inc. v. S. Broward Hosp. Dist.*, 8 So.3d 1167, 1171 (Fla. 4th DCA, 2009) ("finding compliance with notice requirement "a condition precedent" to lawsuit against public entity.").

■ Lanaza's reliance on the Eleventh Circuit's decision in *Hattaway v. McMillian*, 903 F.2d 1440 (11th Cir.1990) for the proposition that her failure to wait six months after giving notice under § 768.28 is curable and does not require dismissal is inapposite in this instance. In *Hattaway*, the plaintiff tiled proper notice and alleged compliance with the statutory requirements in her complaint. Here, in her Complaint Lanaza admits not filing notice prior to filing the Complaint, and does not

allege prior compliance with § 768.28 as required the statute and related case law.

As Lanaza has failed to comply with the mandatory notice requirements of § 768.28, Count IX of Lanaza's Second Amended Complaint is **dismissed without prejudice,** and with leave to amend the Complaint alleging proper compliance with the statutory notice provisions.

### III. COUNT X: SECTION 393.13 CLAIM AGAINST DCF

In Count X, Lanaza alleges that DCF also violated her rights under Fla. Stat. § 393.13. Similarly to Counts III and IV, Count X consists of one paragraph listing ten duties allegedly owed under § 393.13, 2d Am. Compl. ¶ 148, another stating that DCF owed those duties, 2d Am. Compl. ¶ 149, and a final paragraph stating that DCF "breached said duty," and that as a result Lanaza did not receive adequate care and suffered deterioration in her health. 2d Am. Compl. ¶ 150.

■■■ Among other assertions in its motion to dismiss, DCF argues that § 393.13 does not authorize claims against the state. It is clear that under § 393.13 there is a private right of action against any "person" who violates the rights provided by the statute, as both the statute and Florida case law demonstrate. Fla. Stat. § 393.13(5) (2011); *see also Baumstein v. Sunrise Community, Inc.*, 738 So.2d 420, 421 (Fla. 3d DCA 1999). However, it is not clear that there is such a private right of action against a state agency (i.e. whether a state agency is a "person" under § 393.13). Neither State nor Federal courts in this Circuit have ruled on the question of whether a state or one of its agencies is a "person" under § 393.13.

The closest analogy at hand is the Third Circuit Court of Appeals's holding in *Loucks v. Adair*, 312 So.2d 531 (Fla. 3d DCA 1975). In that case, the court ad-dressed a statute whose right of action is identical to that of § 393.13, Fla. Stat. § 394.459(13) (2011), dealing with the rights of mental health patients. While the plaintiff in *Loucks* argued that the subsection created a cause of action against state hospitals, the court disagreed, holding that state sovereign immunity must be construed strictly, and that neither state agencies nor individuals acting in their official capacity could be held liable under the statute. *Loucks*, 312 So.2d at 534. Using *Loucks* as a close analogy, a state agency should likewise not be held liable under § 393.13.

The Florida Supreme Court addressed *Loucks* in *Rupp v. Bryant*, 417 So.2d 658 (Fla.1982). In her Response brief, Lanaza relies on *Rupp* for the proposition that *Loucks* is no longer good law. To a certain extent, she is correct; The court in *Rupp* did overturn *Loucks*, but only partially, invalidating *Loucks* with regard to *individual* state officers acting in their official capacity, but saying nothing about the *Loucks* court's similar holding regarding state *agencies.* The fact that the Florida Supreme Court, upon review of the entire *Loucks* holding, only saw fit to overturn the decision regarding individual state officials indicates that *Loucks* is still good law with regard to state agencies, and applies in this case.

For the reasons set forth above, Count X of Lanaza's Second Amended Complaint is **dismissed with prejudice.**

### IV. BRINGING OF CLAIM BY UNAUTHORIZED PERSON

■■■ DCF further argues that Lanaza's Complaint was not brought by a person authorized to act on her behalf. Lanaza states that her Complaint is brought "by and through her next friend, BERNARD PERLMUTTER, ESQ." 2d Am. Compl.

1:1. DCF correctly points out that the records of this Court establish that the next friend appointed for the purposes of this action is not Mr. Perlmutter, but the University of Miami School of Law Children and Youth Law Clinic, and argues that based upon the records of the Court, the Complaint should be dismissed as it has been filed by a person not authorized to act on behalf of Lanaza. Lanaza admits that this was the result of a clerical error, but suggests that, due to the understanding of the parties and the Court being clear, such error does not warrant dismissal.

"Subject to the discretion of the court, and in the absence of a statute or rule of court providing otherwise, amendment by interlineation is considered permissible, particularly in the case of an amendment of a trivial or formal nature." 71 C.J.S. Pleading § 437 (2011). Lanaza's clerical error in substituting Mr. Perlmutter's name for that of the Clinic is an example of such a formal error. It would go against the interests of the parties and this Court to require Lanaza to replead the entire Complaint on the basis of such an error, particularly when the proper next friend to Lanaza and the association of Mr. Perlmutter with the Clinic is clear to both the parties and this Court. Thus, DCF's motion to dismiss Lanaza's Complaint for the bringing of claims by an unauthorized person is **denied**. In lieu of such dismissal, this Court hereby grants Lanaza leave to amend the Second Amended Complaint by interlineation, replacing the name of Mr. Perlmutter with the proper party as next friend to Lanaza. Lanaza shall file a corrected Second Amended Complaint reflecting this interlineation within **14 days** of this Order. Additionally, should Lanaza file a Third Amended Complaint realleging any Counts dismissed without prejudice in this Order, that Complaint shall name the proper party as next friend to Lanaza.

## V. DCF'S MOTION TO STAY PROCEEDINGS ON COUNTS IX AND X

DCF has additionally filed a Motion to Stay Proceedings on Counts IX and X of Lanaza's Second Amended Complaint for failing to comply with the six-month waiting requirement of § 768.28. *See* ECF No. 188. DCF argues that despite acknowledging noncompliance with the presuit notice requirements of the statute and suggesting (though never moving for) a stay of proceedings for the six months, Lanaza continued to pursue discovery against DCF in violation of the waiting period. Thus, DCF requests a stay of proceedings on Counts IX and X until the proper six-month waiting period has elapsed. As set forth above, Counts IX and X were dismissed. Furthermore, as Lanaza did not properly allege prior compliance with the notice requirements of § 768.28, this Court cannot verify, on the face of the Complaint, the relevant times to which the six-month period applies. Therefore, DCF's motion to stay proceedings on Counts IX and X are **denied as moot.**

## ANALYSIS AND CONTROLLING AUTHORITY ON DEFENDANT THE ESTATE'S MOTION TO DISMISS LANAZA'S SECOND AMENDED COMPLAINT

In Count **VII**, Lanaza brings a claim against the Estate under 42 U.S.C. § 1983. Lanaza specifically alleges that Rojas was acting under color of state law, 2d Am. Compl. ¶ 122, that Lanaza had the constitutional and federal right to be safe and free from unreasonable risk of harm, 2d Am Compl. ¶ 124, and that Rojas was deliberately indifferent "and/or" acted with reckless disregard to her health and safety, 2d Am. Compl. ¶ 125, 129. Lanaza

then alleges that Rojas violated her constitutional and federal rights by: (1) failing to ensure that medical and disability services were provided at all times; (2) foiling to move her case towards permanency to ensure adoption within the statutory one-year timeframe, resulting in Lanaza's deterioration; (3) failing to initiate the Interstate Compact to allow Woodburn to become Lanaza's caretaker in a timely manner; (4) failing to monitor her medication despite knowing of her medical needs; (5) failing to secure social security benefits for her; and (6) failing to ensure her health and safety while she was in a group home, allowing her to deteriorate. 2d Am. Compl. ¶ 126. Lanaza alleges that Rojas took these actions knowing they would violate her rights and place her at a substantial risk of harm. 2d Am. Compl. ¶ 126.

As discussed above with regard to Lanaza's other § 1983 claims, to succeed on such a claim Lanaza must establish offending conduct that was committed by a person acting under color of state law, and that the conduct deprived her of her constitutional or federal rights.

### A. Jurisdiction, § 1983 "Persons," and Eleventh Amendment Arguments

Among other arguments in its Motion to Dismiss, the Estate makes several arguments relating to this Court's jurisdiction and "personhood" under § 1983. First, the Estate asserts that the Complaint refers to "Olga Rojas" rather than her estate, and therefore it should be dismissed for a lack of personal or subject matter jurisdiction over the Estate; however, the Estate was properly substituted as a Defendant by this Court's order on September 14, 2011. *See* ECF No. 213. Thus, Defendant's argument on this point is moot. Second, the Estate asserts that it is not a "person" under § 1983. The statute provides for a cause of action against "[e]very person" who deprives another of their rights under color of state action. 42 U.S.C. § 1983 (2011). As an estate is not a "person," the Estate argues that this claim is not actionable and should be dismissed. However, Lanaza asserts that this cause of action against Rojas survives her death. The Eleventh Circuit has held that where federal law is deficient regarding survival of a claim, the law of the forum state applies. *Estate of Gilliam ex rel. Waldroup v. City of Prattville,* 639 F.3d 1041, 1045 (11th Cir.2011) (citing 42 U.S.C. § 1988(a) (2011)). Under applicable Florida law, "[n]o cause of action dies with the person. All causes of action survive and may be commenced, prosecuted, and defended in the name of the person prescribed by law." Fla. Stat. § 46.021 (2011); *see also Nguyen v. U.S. D.E.A.,* No. 1:0 CV 00026 MP AK, 2005 WL 2143970 (N.D.Fla. Sept. 1, 2005) (Applying § 46.021 to allow survival of cause of action against deceased defendant). Thus, any cause of action against Rojas has survived and may be instituted against the Estate.

Third, the Estate argues that the U.S. Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Therefore, the Estate asserts, a state and its officials acting in their official capacities cannot be sued under § 1983. However, the Complaint clearly states that Rojas (now the Estate) is being sued in her individual capacity and not her official capacity. 2d Am. Compl. ¶ 15. Thus, the holding of *Will* is inapposite. *See Hafer v. Melo,* 502 U.S. 21, 22, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) ("The Eleventh Amendment does not bar § 1983 personal capacity suits against officials in federal

court."). Thus, sued in her individual capacity, Rojas (now the Estate) is a "person" for the purposes of this § 1983 action. For the same reason, the Eleventh Amendment also does not act as a bar to this claim, as the Estate argues.

### B. Sufficiency of Pleading and Qualified Immunity

The right that Lanaza asserts—to be safe and free from unreasonable risk of harm while in the custody of the state foster system—has been upheld by the Eleventh Circuit as a constitutional right under the Fourteenth Amendment. *See Maldonado v. Snead*, 168 Fed.Appx. 373, 379 (11th Cir.2006) (quoting *Ray v. Foltz*, 370 F.3d 1079, 1082 (11th Cir.2004)). However, violations of this right are held to be exceptional, and the Eleventh Circuit has applied a "deliberate indifference" standard to pleadings bringing a § 1983 action asserting this right in the context of foster care, noting that

> [d]efendants may be held liable under 1983 if they, or in the case of an agency, its top supervisory personnel, exhibited deliberate indifference to a known injury, a known risk, or a specific duty and their failure to perform the duty of act to ameliorate the risk of injury was a proximate cause of plaintiffs deprivation of rights under the Constitution.

*Taylor ex rel. Walker v. Ledbetter*, 818 F.2d 791, 797 (11th Cir.1987) (quoting *Doe v. N.Y.C. Dep't of Soc. Servs.*, 649 F.2d 134, 145 (2d Cir.1981)); *see also Omar v. Babcock*, 177 Fed.Appx. 59, 63 (11th Cir. 2011) (stating that in foster child's action under § 1983 against caseworker, "[defendants] are not subject to this damage suit unless the record contains evidence that they (1) actually knew of a risk of serious harm; (2) recklessly disregarded that risk of harm; and (3) their conduct was more than merely negligent" (citing *Ray*, 370

F.3d at 1083)). Notably, whether or not the risk of serious harm is known is not an objective inquiry; the plaintiff must allege that the defendant actually had subjective knowledge of the risk of harm from their inaction. *Id.; see also Maldonado*, 168 Fed.Appx. at 379 ("This standard means that '[a] child abused while in foster care, in order to successfully recover from state officials in a section 1983 action, will be faced with the difficult problem of showing actual knowledge of abuse.' "). After having this subjective knowledge of a substantial risk of harm, the official must then deliberately or recklessly disregard the risk. *Id.* at 379 ("[A] state official acts with deliberate indifference only when he disregards a risk of harm of which is is *actually aware* " (quoting *Ray*, 370 F.3d at 1083).).

The Estate argues that Lanaza has failed to allege both that Rojas had subjective knowledge of the risk of a deprivation of her rights and that Rojas disregarded that risk either deliberately or recklessly. The Estate additionally asserts that Rojas was entitled to qualified immunity for her actions. Qualified immunity is a doctrine that protects government officials sued in their individual capacities as long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Sarver v. Jackson*, 344 Fed.Appx. 526, 528 (11th Cir. 2009) (quoting *Andujar v. Rodriguez*, 486 F.3d 1199, 1202 (11th Cir.2007)). Notably, qualified immunity may be asserted on a pretrial motion to dismiss. *Id.* Where such immunity is asserted, a plaintiff must plead facts that would strip the defendant of qualified immunity. *Maldonado*, 168 Fed.Appx. at 379. In order to do so, the plaintiff must plead facts sufficient to meet a two-prong analysis: (1) that the facts, as alleged and viewed in a light most favorable to the plaintiff, establish a

constitutional violation; and (2) that the constitutional right violated was clearly established. *Sarver,* 344 Fed.Appx. at 528 (citing *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). Establishment of a violation is determined by the above § 1983 "deliberate indifference" standard. Whether or not a constitutional right is "clearly established" is determined by allegations that the right is "sufficiently established so as to provide public officials with fair notice that the conduct alleged is prohibited." *Randall v. Scott,* 610 F.3d 701, 715 (11th Cir.2010); *see also Shepard v. Davis,* 300 Fed.Appx. 832, 839 (11th Cir.2008) ("A constitutional right is 'clearly established' when the contours of the right are sufficiently clear [such] that a reasonable officer would understand that what he is doing violates that right" (internal quotation omitted).).

Thus, in summary, in order to sufficiently state a claim against the Estate for a deprivation of her right to be safe and free from unreasonable risk of harm under § 1983, Lanaza must plead sufficient factual allegations to support a plausible inference that: (1) Rojas was deliberately indifferent or recklessly disregarded a subjectively known risk of serious harm from her conduct or inaction; and (2) Lanaza's right to be safe and free from unreasonable risk of harm was sufficiently clear that a reasonable caseworker would understand that the conduct or inaction would violate that right.

■ Applying Lanaza's allegations to the legal standard set forth above, it appears that she has alleged sufficient facts to support a claim that Rojas had subjective knowledge of a risk of serious harm and disregarded that risk for the purposes of surviving a motion to dismiss. Lanaza alleges, among other claims, that Rojas failed to ensure that she received medical and disability services during her time in foster care, failed to monitor her medication during this time, and failed to ensure her safety during her time in a group home. Furthermore, Lanaza alleges that Rojas knew of her medical and developmental needs and was responsible for ensuring that those needs were adequately met. Taken as true, these allegations establish that Rojas had the requisite subjective knowledge of a risk of serious harm from a failure to properly care for Lanaza. The allegation that Rojas was Lanaza's assigned caseworker further suggests that she was actually aware of Lanaza's needs.

Lanaza alleges that, by her inaction, Rojas failed to fulfill her duties to Lanaza, resulting in a deprivation of her constitutional rights. As discussed above, this failure must rise to a level of deliberate or reckless disregard—more than mere or gross negligence. The Estate argues that Lanaza has not sufficiently alleged that Rojas's failures rose to this level of culpability. The relevant case law, however, does not support the Estate's position. In *H.A.L. ex rel. Lewis v. Foltz,* 551 F.3d 1227 (11th Cir.2008), the Eleventh Circuit addressed a similar motion to dismiss a § 1983 complaint against DCF employees. There, the court held that, in certain circumstances, foster care personnel have "fair warning" that inaction in performing their duties can result in a deprivation of a child's constitutional rights. *Id.* at 1231. Moreover, the court held that deliberate indifference to that risk can be inferred from the fact that the defendant, despite authority to act, took no steps to protect against a known risk. *Id.* at 1232. In that case, the court held that DCF caseworkers were sufficiently alleged to be deliberately indifferent to a risk of sexual abuse in a foster home by allegations that they knew of prior abuse in the home but did not act to guard the plaintiffs from being victimized. *Id.* Despite different facts in this

instance, similar reasoning can be applied: Lanaza alleges that Rojas had subjective knowledge to a risk of serious harm from a failure to properly care for her, as well as subjective knowledge of her unique medical and developmental needs. Lanaza states that, despite this knowledge, and despite her authority to ensure that Lanaza received adequate treatment, she failed to act to do so by not ensuring provision of adequate services, not moving the case towards permanence in a timely fashion, and not properly monitoring her medication, among other examples. Applying the *H.A.L.* court's "knowledge-authority-inaction" standard to these facts, Lanaza has sufficiently alleged facts supporting a plausible inference that Rojas was deliberately indifferent to a clear and subjectively known risk of serious harm, meeting the deliberate indifference standard for stating such a claim under § 1983. Furthermore, Lanaza's right to be safe from an unreasonable risk of harm was clear to someone in Rojas's position as her caseworker. As in *H.A.L.*, Rojas was on fair warning that inaction in the performance of her duties, despite knowledge of a risk of harm, could lead to a deprivation of Lanaza's rights. Thus, Lanaza has alleged sufficient facts both stating a cause of action under § 1983 and reasonably suggesting that qualified immunity does not apply, at least for the purposes of surviving a motion to dismiss.

### C. Statute of Limitations

The Estate also argues that Lanaza's § 1983 claim is time-barred by the applicable statute of limitations. As discussed above with regard to both One Hope and DCF, dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred. *Sec'y of Labor v. Labbe,* 319 Fed.Appx. 761, 764 (11th Cir.2008). While § 1983 does not provide for a statute of limitations, it has

been established that "[a]ll constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." *Sneed v. Pan Am. Hosp.,* 370 Fed.Appx. 47, 49 (11th Cir.2010) (quoting *McNair v. Allen,* 515 F.3d 1168, 1173 (11th Cir.2008)). The applicable statute of limitations in Florida provides for a four-year limitations period. Fla. Stat. § 95.11(3)(p) (2011); *see also Sneed,* 370 Fed.Appx. at 47 (stating same). As demonstrated above, Lanaza has alleged facts reasonably suggesting that this limitations period is tolled to seven years. *See* Fla. Stat. § 95.051(1)(d), (h) (2011).

Unlike Lanaza's claim of estoppel, relating to her SSI benefits, the alleged facts giving rise to her § 1983 claim against the Estate were not alleged in the original or First Amended Complaints. *See* ECF Nos. 1, 40. Therefore, under Fed.R.Civ.P. 15(c), Lanaza's § 1983 claim against Rojas does not relate back to the original Complaint. Any cause of action under § 1983 must have accrued on or after May 4, 2004 (seven years preceding the filing of the Second Amended Complaint).

Despite application of Florida's personal injury statutory period to § 1983 actions, the Eleventh Circuit has held that federal law, and not state doctrine, determines the date on which a cause of action under § 1983 accrues. "For a § 1983 action, the statute begins to run from the date 'the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'" *Sneed,* 370 Fed.Appx. at 49 (quoting *Brown v. Ga. Bd. of Pardons and Paroles,* 335 F.3d 1259, 1261 (11th Cir.2003)). Lanaza argues that this standard presents a question of fact as to when she, a mentally

disabled minor, would have reason to know of the facts supporting her cause of action. The Estate, on the other hand, cites the Third Circuit's decision in *Barren v. United States*, 839 F.2d 987 (3d Cir.1988), which held that the limitations period on a plaintiffs medical malpractice claim began to run when plaintiff had access to facts which would have enabled a reasonable person to discover the alleged malpractice, even though his mental facilities were so affected that he was incapable of perceiving the alleged negligence. The Third Circuit later carved out an exception to this doctrine, particularly not applying it in cases where the alleged mental infirmity was not caused by the government, or where a minor plaintiff did not have a parent or legal guardian. *See Kach v. Hose*, 589 F.3d 626, 636 (3d Cir.2009). Moreover, at least one other court in this Circuit has found that a child in foster care could not have been reasonably cognizant of his rights during the period of their deprivation, resulting in accrual of his cause of action only upon "the first serious effort by a fiduciary ... to pursue legal remedies on his behalf." *Omar ex rel. Cannon v. Lindsey*, 328 F.Supp.2d 1287, 1291 (M.D.Fla.2004).

 There is currently no other authority within this Circuit regarding when a cause of action under § 1983 accrues for a child in foster care; however, the reasoning of the Middle District is persuasive on this issue. It is reasonable to argue that minors raised in the foster care system may not be capable of having a sufficiently "prudent regard" for their constitutional rights to understand that the facts of their treatment support a cause of action against their legal custodian and its employees. This proposition is even more convincing in the case of a minor allegedly suffering from mental and developmental disabilities. In such circumstances, it is rational that a child such as Lanaza would have to rely upon a guardian or similar fiduciary to be reasonably prudent of her rights in her stead. Furthermore, the strictly objective policy set forth in *Barren* is not binding authority in this Circuit (and even if it were, it is unclear whether it would apply in this case, where Lanaza's mental infirmities were not caused by the government and she did not have a parent or legal guardian until 2010). Thus, based on Lanaza's factual allegations, taken as true, and the relevant legal authorities, it is not clear on the face of the complaint that Lanaza's claims are time-barred.

Based on the foregoing analysis, Lanaza has alleged sufficient facts supporting a plausible inference that Rojas, in her individual capacity, deprived her of her constitutional rights through deliberate or reckless indifference in the face of her subjective knowledge of a risk of harm, authority to act, and duty to Lanaza. Furthermore, dismissal of Lanaza's claim on statute of limitations grounds is inappropriate at this stage. Therefore, the Estate's motion to dismiss Count VII of Lanaza's Second Amended Complaint is **denied.**

### CLAIMS OF WOODBURN

In her *pro se* Second Amended Complaint, it is somewhat unclear exactly what claims Woodburn attempts to bring. She has listed seven enumerated "Claims." However, it appears that she is actually raising claims against all Defendants for failing to provide "support and care" to Lanaza, 2d Am. Compl. 57:5 (CLAIM # 1), for promissory estoppel, *Id.* at 57:16 (CLAIM # 2), for "custodial interference," *Id.* at 58:4 (CLAIM # 4), and for intentional infliction of emotional distress, *Id.* at 57:13 (CLAIM # 1).

### ANALYSIS AND CONTROLLING AUTHORITY ON ALL DEFENDANTS' MOTIONS TO DISMISS WOODBURN'S SECOND AMENDED COMPLAINT

 All moving Defendants assert that Woodburn lacks standing to bring several of her causes of action. The question of standing involves a question of whether the litigant is entitled to have the court decide the merits of the dispute. *Church v. City of Huntsville,* 30 F.3d 1332, 1335 (11th Cir.1994). In order to establish standing, "a plaintiff must have 'suffered an injury-in-fact that would be corrected by [a] favorable decision in the lawsuit.'" *Id.* (quoting *Cheffer v. McGregor,* 6 F.3d 705, 708 (11th Cir.1993)). The court in *Church* also stated that "at an irreducible minimum, Art. III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Id.* (internal quotation omitted). Where lack of standing is raised in a motion to dismiss, resolution of the issue requires reference to the allegations in the Complaint. *Id.* at 1336.

 In her CLAIM # 1, Woodburn states that all Defendants are being "sued for gross intentional and adverse intended acts towards the best interest and well being of disabled minor child," and for the "restricting, and limiting of [Woodburn] in providing the support and care [of Lanaza]" 2d Am. Compl. 57:9. To the extent that Woodburn seeks to state a cause of action against Defendants based upon their alleged failure to care for Lanaza, she has alleged injuries personal to Lanaza and not to her. Therefore she would have no standing to assert such a claim.

Similarly, in her CLAIM # 2, Woodburn alleges that the agreement between Woodburn and DCF "to apply for the SSI bene-fits, on behalf of [Lanaza]" amounted to an "implied contract." 2d Am. Compl. 57:16. While this is not entirely clear, it appears that Woodburn attempts to assert a cause of action for promissory estoppel (or a related quasi-contract theory) against DCF. Woodburn alleges that the breaching of this implied contract "caused irreparable harm to [Lanaza], causing severe emotional distress and mental anguish." Here again, Woodburn only alleges "irreparable harm" to Lanaza. To the extent that the "emotional distress and mental anguish" refer to emotional distress on Woodburn's part, a discussion of her claim of intentional infliction of emotional distress is set forth *infra.* Regardless, this suggestion is not clearly alleged. Therefore, Woodburn has no standing to assert such a claim. Moreover, CLAIM # 2 suffers from pleading insufficiencies as a claim for promissory estoppel. As discussed above with regard to Lanaza's claims, Florida law requires that a plaintiff show: (1) a representation as to a material fact that is contrary to a later-asserted position; (2) reliance on that representation; and (3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon. *State v. Harris,* 881 So.2d 1079, 1084 (Fla.2004). While Woodburn refers to an "agreement ... to apply for the ssi [sic] benefits," such an agreement is not alleged anywhere else with any specificity in her Complaint. Moreover, she does not allege any detrimental reliance on the agreement. Therefore, due to Woodburn's lack of standing and failure to sufficiently plead a cause of action for promissory estoppel, dismissal of this claim is appropriate.

 In her CLAIM # 4, Woodburn states that Defendants "interfered with the custodial rights of [Woodburn]." 2d Am. Compl. 58:9. Florida courts have rec-

ognized a cause of action in tort for "intentional interference with a custodial parent-child relationship by a non-parent." *Stone v. Wall,* 734 So.2d 1038, 1041–48 (Fla.1999) (recognizing cause of action). The elements of that cause of action are: (1) that the plaintiff had superior custody rights to the child; and (2) that the defendant intentionally interfered with those rights. *Id.* at 1042. Moreover, "[i]t is a defense to the cause of action that the plaintiff did not have superior custodial rights." *Id.*

■ First, this cause of action does not apply to Woodburn's allegations. In Florida, the cause of action is only applied to cases in which a child is physically taken from his custodial parent. *See Stone,* 734 So.2d at 1045 (noting that cause of action "requires physical absence of child from home"); *Davis v. Hilton,* 780 So.2d 974, 976 (Fla. 4th DCA 2001) (same). Here, Woodburn alleges interference by the alleged taking of Lanaza's SSI benefits. She does not allege any physical taking. Moreover, she has not sufficiently alleged that she had superior custodial rights to Defendants (and it is unlikely she could, as Lanaza was a ward of the State until April 2010, 2d Am. Compl. ¶ 76). Thus, Woodburn has failed to state a cause of action of "custodial interference."

In her CLAIM # 1, Woodburn accuses all Defendants of "gross intentional negligent and adverse intended acts towards the best interest and well being of disabled minor child, [Lanaza] . . . causing extreme mental anguish, and emotional distress to caretaker/foster parent [Woodburn]." 2d Am. Compl. 57:9. Construed liberally, this appears to raise a claim for intentional infliction of emotional distress against Defendants. Unlike her other claims, this allegation states that Woodburn personally suffered injury as a result of Defendants' alleged conduct. Therefore, she has standing to bring such a claim.

■ Under Florida law, to state a claim for intentional infliction of emotional distress, a plaintiff must show: (1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) that the conduct caused emotional distress; and (4) that the distress was severe. *Nettles v. City of Leesburg Police Dep't,* 415 Fed. Appx. 116 (11th Cir.2010) (quoting *Hart v. United States,* 894 F.2d 1539, 1548 (11th Cir.1990)). "Outrageous" conduct is that which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Bradley v. Pfizer, Inc.,* 440 Fed.Appx. 805, 810 (11th Cir.2011). Reviewing the standards set forth by the Eleventh Circuit on this issue, Woodburn has simply failed to allege conduct by any Defendant rising to this level of outrageousness. *See, e.g., Rubio v. Lopez,* 445 Fed.Appx. 170 (11th Cir.2011) (finding failure to allege sufficient outrageous conduct where deputy sheriff hobble-tied arrestee on black asphalt pavement in sun, resulting in second-degree burns to face and chest); *Christman v. Walsh,* 416 Fed.Appx. 841 (11th Cir.2011) (finding no outrageous conduct in State court's order of imprisonment of plaintiff for ten days without hearing); *MackMuhammad v. Cagle's Inc.,* 379 Fed.Appx. 801 (11th Cir.2010) (finding no outrageous conduct where defendants made jokes about plaintiff's Muslim religion). Woodburn claims that Defendants restricted and limited her in providing care and support for Lanaza, and that DCF breached an implied contract to provide her with the SSI benefits. Essentially, these are claims that Defendants did not provide medical and financial services. Compared to the physical and verbal assaults above, held to be insufficient, Woodburn has not met the high bar set forth by this Circuit. More-

over, she has failed to allege with any factual specificity how Defendants' conduct was intentional or reckless. Her assertion that the conduct was "gross intentional negligent" conduct is both confusing and conclusory. *See Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Thus, Woodburn has failed to sufficiently state a cause of action for intentional infliction of emotional distress.

The remaining claims in Woodburn's Complaint either do not raise any cognizable causes of action or, even construed liberally, are simply too vague to decipher.

Defendants argue that Woodburn's Complaint should be dismissed with prejudice, as it is her third attempt at a Complaint. While this is true, it should be noted that this Court has not yet made a substantive ruling on her Complaint. Her first Complaint (ECF No. 1) was dismissed due to her failure to file a timely response to Defendants' Motions to Dismiss. *See* ECF No. 30. The Court then granted her Motion for Reconsideration when Defendants also failed to file a timely response. She then filed an Amended Complaint as a matter of right (ECF No. 40). Again, Defendants filed Motions to Dismiss. Before ruling on those Motions, the Magistrate Judge determined that Woodburn could not represent Lanaza in this action as a *pro se* plaintiff, and counsel was appointed for Lanaza. *See* ECF Nos. 86, 101. This Court then granted Plaintiffs' Motion to file a Second Amended Complaint. *See* ECF No. 133. Thus, while Woodburn has indeed filed three Complaints in this matter, there has not yet been a substantive ruling on any of them. Therefore, dismissal with prejudice is not appropriate.

Based on the foregoing, Woodburn's Complaint is **dismissed without prejudice with regard to all Defendants,** with leave to amend the Complaint raising causes of

action personal to her and pleading any such causes of action with sufficient factual allegations to put Defendants on reasonable notice of the claims against them. Woodburn is forewarned, however, that if she files a legally insufficient Third Amended Complaint, the Court will give serious consideration to dismissing same with prejudice.

## *CONCLUSION*

In conclusion, as a result of the above findings:

1. The Motions to Dismiss Counts I and II of Lanaza's Complaint, alleging negligence against Our Kids and One Hope, are **denied.**

2. The Motions to Dismiss Counts III and IV of Lanaza's Complaint, alleging violations of her rights under § 393.13 by Our Kids and One Hope are **granted in part and denied in part.** To the extent that the Motions seek to dismiss her claim of a violation of her right to receive prompt and appropriate medical care under § 393.13(4)(c), the Motions are **denied.** However, to the extent that the Motions seek to dismiss her claim of a violation of her right to social interaction and community participation, Fla. Stat. § 393.13(3)(e), the Motions to Dismiss are **granted without prejudice.** Further, to the extent to Motions seek to dismiss her claim for violating "Legislative intent" of the statute as set forth in Fla. Stat. § 393.13(2), the Motions are **granted with prejudice.**

3. The Motions to Dismiss Counts V and VI of Lanaza's Complaint, alleging violations of her constitutional rights under § 1983 by One Hope, Hodrick, Our Kids, and Allegra, are **granted without prejudice** with re-

gard to Hodrick and Allegra, and **denied** with regard to One Hope and Our Kids.

4. The Motion to Dismiss Count VII of Lanaza's Complaint, alleging violations of her constitutional rights under § 1983 by the Estate, is **denied.**

5. The Motions to Dismiss Count VIII of Lanaza's Complaint, alleging promissory estoppel against DCF and Our Kids, are **granted without prejudice** with regard to Our Kids, and **denied** with regard to DCF.

6. The Motion to Dismiss Count IX of Lanaza's Complaint, alleging negligence against DCF, is **granted without prejudice.**

7. The Motion to Dismiss Count X of Lanaza's Complaint, alleging violations of her rights under § 393.13, is **granted with prejudice.**

8. Woodburn's Second Amended Complaint is **dismissed without prejudice** with regard to all Defendants.

9. DCF's Motion to Stay Proceedings on Counts IX and X of Lanaza's Second Amended Complaint is **denied as moot.**

10. DCF's Motion to Dismiss Lanaza's Complaint for bringing of claims by an unauthorized person is **denied.** Lanaza is hereby granted leave to amend the Second Amended Complaint by interlineation, replacing the name of Mr. Perlmutter with the proper party as next friend. Lanaza shall tile a corrected Second Amended Complaint within 14 days of this Order. Alternatively, should Lanaza file a Third Amended Complaint as set forth below, that Complaint shall name the proper party as next friend.

Plaintiffs may each file a Third Amended Complaint that comports with the above findings within **14 days** of this Order. If such filing is made, Defendants shall file a response within **14 days** of the filing of a Third Amended Complaint. If no such filing is made, Defendants shall file an Answer to any Counts not dismissed within **28 days** of this Order.

**DONE AND ORDERED.**